682 P.2d 464

**STATE of Arizona, Appellee,**

v.

**Clarence ROPER, Appellant.**

**Nos. 1 CA–CR 6356, 1 CA–CR 6357.**

Court of Appeals of Arizona, Division 1, Department A.

April 24, 1984.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., Diane M. Ramsey, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by James R. Rummage, Deputy Public Defender, Phoenix, for appellant.

## OPINION

CONTRERAS, Judge.

Appellant was charged by indictment in CR–124604 with three counts of armed robbery, class two felonies. The incidents charged in the indictment occurred during the month of January, 1982. Timely defense motions to sever the counts were made prior to trial and at the close of the evidence. The motions were denied and the case was submitted to the jury. The jury found appellant not guilty on Counts I and II, but returned a verdict of guilty on Count III. We find that the trial court abused its discretion by not severing Count III from the other two counts of the indictment. We therefore reverse the conviction on Count III and remand the matter for new trial on this count.[1]

On appeal, appellant has raised the following issues:

I. The trial court abused its discretion by denying appellant's motion to sever.

II. The trial court abused its discretion in denying a Rule 11 motion by appellant's trial counsel.

---

**1.** In CR–125475, appellant was charged by information with three counts of aggravated assault, class six felonies. On June 16, 1982, appellant entered into a plea agreement whereby he agreed to plead no contest to two of the three counts and the sentences were to run concurrently with each other and with the sentence to be imposed on the armed robbery conviction in CR–124604. On July 21, 1982, the trial judge imposed a maximum sentence of 21 years on the armed robbery conviction and presumptive sentences on the aggravated assault charges, 1½ years. These sentences were to be served concurrently with the sentence in CR–124604.

III. The trial court erred by admitting hearsay statements through a police officer's testimony.

IV. The sentence imposed was excessive.

The underlying facts, evidence, and applicable law will be set forth and discussed under separate issue headings.

## MOTION TO SEVER

Prior to trial appellant filed a written motion to sever the counts from each other and the state responded that joinder was proper under Rule 13.3, Arizona Rules of Criminal Procedure, because the crimes charged in the indictment were part of a common plan or scheme. In support of its argument, the state relied on *State v. Tipton*, 119 Ariz. 386, 388, 581 P.2d 231, 233 (1978) for the proposition set forth in that case by the Arizona Supreme Court that "for two crimes to be classified as a common plan or scheme it is not necessary for the crimes to have been perpetrated in an absolutely identical manner, ... so long as the court perceives a 'visual connection' between the two crimes [citations omitted]". Appellant filed a reply memorandum setting forth what were perceived to be substantial differences in regard to the three robberies which, appellant contended, mandated severance in accordance with Rule 13.4 of the Arizona Rules of Criminal Procedure. The pretrial motion to sever was decided on the memoranda filed in support of each side's position. This motion was denied. Upon completion of the trial and before submission to the jury, the motion to sever was renewed. This motion was similarly denied.

■ It is settled that a defendant must demonstrate a clear abuse of discretion with respect to the trial court's decision to join offenses, based on a showing at the time the motion is made and not what ultimately transpires at trial, *State v. Dale*, 113 Ariz. 212, 550 P.2d 83 (1976), and a trial court possesses broad discretion in the area of joinder and severance. *Tipton, supra.* In *Tipton* and *State v. Moore*, 108 Ariz. 215, 495 P.2d 445 (1972), the case upon which the court in *Tipton* relied when it stated that the trial court need only perceive a "visual connection" between two crimes, the facts of the various offenses joined for trial shared substantial similarities. However, even if charges are not properly joined as part of a common plan or scheme under Rule 13.3(a)(3), it may nevertheless not be prejudicial or an abuse of discretion to try the charges together as similar acts, where the evidence of the other crimes would be admissible under another theory advanced. *State v. Henderson*, 116 Ariz. 310, 569 P.2d 252 (App.1977).

■ When evidence of other crimes is admitted to show common plan or scheme "the similarities between the offenses 'must be in those important aspects where normally there could be expected to be found differences. Evidence is not admissible except as it may show a tendency or likelihood of a plan common to all offenses to commit the crime.'" *State v. Jones*, 26 Ariz.App. 68, 71, 546 P.2d 45, 48 (1976), *quoting State v. Akins*, 94 Ariz. 263, 266–267, 383 P.2d 180, 182–183 (1963). As stated in *Moore*, "[t]he use of guns, getaway vehicles and the occurrence of robberies at times when there were no customers [are circumstances which] can hardly be relied upon to show a common plan or scheme." 108 Ariz. at 217, 495 P.2d at 447. The court in *Moore* quoted with approval from *Hardin v. State*, 462 P.2d 357, 359–60 (Okl. Cr.1969), in part, as follows:

"The court has repeatedly held that this exception and other exceptions to the general rule are to be used with the utmost caution in that the court must perceive a visual connection and in case any doubt is entertained, it is to be resolved in favor of defendant. The exception to the general rule is not secondary to the rule and before evidence of other crimes can be competent or admissible in a criminal trial to prove the specific crime charged on the grounds of common scheme or plan, the two or more crimes must be so clearly related that the proof of one tends to establish the other and should never be admitted when it tends

to show that the accused has committed other crimes wholly independent of that for which he is on trial."

108 Ariz. at 218, 495 P.2d at 448.

■ Furthermore, as noted by the court in *State v. Jackson*, 124 Ariz. 202, 603 P.2d 94 (1979), when utilizing the common scheme exception, a court must determine the admissibility of the other acts by reviewing not only the similarities, but also the differences between the alleged acts. Joinder under Rule 13.3(a)(3), Arizona Rules of Criminal Procedure, has been held to be "coextensive with the 'common scheme or plan' exception to the rule against using evidence in one prosecution tending to prove the commission of another distinct and independent crime...." *Henderson*, 116 Ariz. at 316, 569 P.2d at 258. The rules on joinder and severance are intended to further not only liberal joinder but also *liberal severance. Henderson, supra.* Where there is any doubt, it must be resolved in favor of the defendant. *Moore, supra.*

In this case, the state relied on proposed proof of the armed robberies alleged in Counts I and II to create an inference that appellant was involved in the armed robbery which occurred in Count III. It argues that the "visual connection" between the offenses included: excessive force was used on the lone victim in all three armed robberies; there was an attempt to remove personal property from the lone victim's person in each incident; an alcoholic beverage was taken from the establishments in Counts II and III; all of the robberies took place when there were few customers present. However, we find that the differences between the crimes alleged in Counts I and II and the crime alleged in Count III were substantial. In so finding we have considered the similarities of the *modus operandi* in Counts I and II as compared and contrasted to that of Count III. Count I involved the robbery of a gas station with a gun wherein the lone clerk was shot. The method of approach used in that case was very similar to Count II in that a juvenile first entered the establishment for

seemingly innocuous purposes. In Count I the juvenile went to the clerk of the gas station to obtain change and in Count II he entered the market and went to the back of the store to obtain a carton of milk from the display counter. In both Counts I and II, after the juvenile had entered the establishment, either one or two adult black males entered the establishment with a gun. In Count I, as noted above, the clerk was immediately shot by one of the adults and, in Count II, two adult males immediately entered the store with one of them firing a shot. Both establishments were robbed in the evening and were in the same neighborhood to the extent that they were only a few blocks apart.

On the other hand, in Count III, a bar was robbed at 7:30 a.m. in the morning and, although a gun was used, it was not fired. No juvenile was present, in contrast to the other two counts, and two black males immediately entered the establishment upon confronting the lone clerk. In addition, the location of the robbery in Count III, although on the "east side of town" was a considerable distance from the locations in Counts I and II. The differences, in the "unique signature" of the crimes joined together, we believe, were significant. In the first two crimes, the *modus operandi* was very similar. A juvenile was used to distract the clerk, with a follow-up confrontation with an adult who used and discharged a firearm. In the first case, the gas station attendant was shot. In the second, a gunshot was fired. In the third case no weapon was fired.

In neither of the crimes charged in the first two counts could the victims identify appellant. However, the state presented the testimony of the juvenile who allegedly participated in the first two armed robberies. The state's intention was clearly to identify appellant as one of the three individuals who was participating in the armed robberies in Counts I and II and, presumably, to allow the jurors to draw an inference that because of appellant's involvement in the commission of those two offenses he was necessarily involved in the

third. Although identified by the victim in Count III, the armed robbery of the bar, appellant's fingerprints were not found at the scene. However, the fingerprints of Chester Player, a codefendant who was also alleged to have been a participant in the first two robberies, were found at the bar.

We do not believe that the articulable similarities in this case demonstrate that there was a common scheme or plan among these offenses which would warrant joinder. A serious doubt in that respect was presented and, as previously stated, where such doubt is entertained, it must be resolved in favor of the defendant. *Moore, supra.* In addition, the evidence relating to the crimes in Counts I and II would not have been admissible under Rule 404(b), Arizona Rules of Evidence, to prove the "identity" of appellant at the robbery of the bar. In *State v. Miller*, the Arizona Supreme Court reaffirmed the rule set forth in *Jackson, supra,* that although evidence of other "bad acts" may be admitted to establish identity under Rule 404(b), the test for admitting prior bad acts to prove identity was the same as that utilized in determining whether evidence would be admissible to prove a common plan or scheme. The court stated:

> there must be similarities between the offenses in those important aspects where normally differences would be expected to be found. Both the similarities and the differences between the acts should be considered in determining admissibility. *Jackson, supra.*

*State v. Miller*, 129 Ariz. 465, 467, 632 P.2d 552, 554 (1981).

■ In comparison to the similarities, the differences between these offenses are significant. So significant, in fact, that we find the trial judge abused his discretion in refusing to allow appellant's motion for severance which was timely presented to the trial court both before trial and following completion of trial. Accordingly, we reverse and remand this matter for a new trial on Count III.

## COMPETENCY

■ It is also asserted that the trial judge abused his discretion by his refusal to have appellant examined to determine his competency as provided in Rule 11, Arizona Rules of Criminal Procedure. Although it is clear that a trial judge is under a continuing duty to inquire into a defendant's ability to understand the nature of the proceedings against him and to require an examination into the competency of a defendant, it is also clear that:

> the trial court has broad discretion in determining if reasonable grounds exist [to question a defendant's competency], and unless there has been manifest abuse in this discretion, the trial court will be upheld [citations omitted].

*State v. Salazar*, 128 Ariz. 461, 462, 626 P.2d 1093, 1094 (1981).

■ Before the trial court, defense counsel alleged that the defendant was "hearing voices" prior to trial and that a Rule 11 examination was necessary to determine his competency to assist in his defense. While this issue may not arise on retrial we shall address it briefly. The record in this case does not demonstrate that the trial court abused its discretion in refusing a Rule 11 examination. There was no avowal of counsel that appellant was in any way unable to assist him in preparing a defense, or that he was unable to understand the nature of the proceedings and the motion filed by counsel. Furthermore, there are no statements to that effect in the record. On the other hand, the record indicates that when the appellant appeared, both at trial and at sentencing, his behavior was not bizarre and he seemed to be able to communicate with and understand the trial judge at all proceedings. We find no abuse of discretion in the denial of the Rule 11 motion.

## HEARSAY TESTIMONY

■ Appellant argues that the officer who prepared a photographic lineup offered hearsay testimony that Chester Player implicated appellant in the offenses. We do not believe that a fair reading of the

**464**

testimony offered by the officer can be construed as being hearsay testimony implicating appellant. The officer merely stated that based on information he received, certain photos were placed into a photographic lineup for presentation to the various victims.

EXCESSIVE SENTENCE

We do not believe a comment on the sentence is appropriate at this time in view of the fact that this case will be retried.

Reversed and remanded for new trial.

BROOKS, P.J., and GRANT, J., concur.