715 P.2d 743

**STATE of Arizona, Appellee,**

v.

**Terry Dean DAY, Appellant.**

No. 6385.

Supreme Court of Arizona,
En Banc.

Feb. 26, 1986.

Robert K. Corbin, Atty. Gen., William Schafer III, Chief Counsel, Crim. Div., Greg McCarthy, Asst. Atty. Gen., Phoenix, for appellee.

O'Dowd, Burke & Lundquist by Bruce Burke, Karen Allen, Tucson, for appellant.

GORDON, Vice Chief Justice.

## FACTS

On June 14, 1984 a jury convicted Terry Dean Day of seventeen counts of sexual assault, ten counts of kidnapping, eight counts of burglary in the first degree, seven counts of armed robbery, two counts of aggravated assault, two counts of attempted sexual assault, one count of sexual abuse, one count of robbery, one count of burglary in the second degree, and one count of attempted burglary in the first degree—in all fifty separate felony counts.

The trial court sentenced Day to nine consecutive life terms plus a consecutive term of 11.25 years. Day appeals from both the convictions and the sentences. We have jurisdiction pursuant to Arizona Const. art. 6 § 5(3) and A.R.S. §§ 13–4033 and 13–4035.

The series of crimes leading to appellant's convictions occurred in Tucson between July 10, 1982, and September 4, 1983. Appellant was arrested on September 15, 1983. During this sixteen-month period the appellant sexually assaulted eight women, including two minors, sexually abused another woman, and committed various other criminal acts. All together the fifty counts encompass a panoply of crimes affecting thirteen victims. Due to the victims' description of their assailant, the appellant was dubbed "the pot-bellied rapist".

During the evening of September 4, 1983, Jesus Romo was home in bed watching television. While in bed Romo first heard and then saw a man trying to open the screen door to his house. Romo screamed and threw a pillow at the man whom he described as tall, fat, and wearing a dark cap. After the man fled, Romo got into his car and tried to follow. He saw a yellow car with a man inside who resembled the suspect. After following the car for some distance at high speeds, he was able to obtain its license plate number. This number he gave to the police.

Several days later, Romo saw the same man, the appellant, at his next door neigh-

bor's home. The appellant asked Romo if he had called the police, and Romo responded that he had. Meanwhile, the license plate number was traced to a car belonging to the appellant's girl friend.

Detective Heiden was assigned to investigate the attempted burglary of the Romo residence on September 8, 1983. On that same day the appellant called Heiden, apparently to clear his name regarding the accusation.

Detective Heiden made an appointment to see the appellant. After several missed appointments the appellant arrived at the Tucson Police Department on September 15, 1983, and met with Detective Heiden. The appellant agreed to be interviewed and fingerprinted. During the course of the interview, ID technicians obtained a match between the appellant's prints and those lifted at two rape scenes. The appellant was then arrested.

At trial the appellant mounted an alibi defense to three of the assaults, based upon the testimony of family members, and for the rest of the charges attacked the credibility of the victims' identifications and the adequacy of the forensic evidence. After a three week trial, the appellant was convicted of all fifty counts alleged against him. Further facts will be adduced below where necessary to resolve the issues raised by appellant.

## ARGUMENT

Appellant raises five issues for consideration by this Court: (1) failure to sever the counts, (2) failure to suppress out-of-court (photo) and in-court identifications, (3) failure to suppress or limit fingerprint evidence, (4) admission of a nude photograph of appellant, and (5) the lawfulness of the sentence imposed. Each will be analyzed below.

## SEVERANCE

Prior to trial the appellant moved to sever the fifty counts into ten separate trials, representing ten separate victims. This motion was denied. The appellant now urges that this was reversible error.

The Arizona Rules of Criminal Procedure provide in part that:

"**Joinder**

**a. Offenses.** Provided that each is stated in a separate count, 2 or more offenses may be joined in an indictment, information, or complaint, if they:

(1) Are of the same or similar character; or

(2) Are based on the same conduct or are otherwise connected together in their commission; or

(3) Are alleged to have been a part of a common scheme or plan.

\* \* \* \* "

Rule 13.3, Arizona Rules of Criminal Procedure, 17 A.R.S. The appellant argues that because joinder was proper only under Rule 13.3(a)(1), he was entitled as a matter of right to severance. *See* Rule 13.4(b), Arizona Rules of Criminal Procedure, 17 A.R.S. The state, in turn, argues that joinder was also proper under Rule 13.3(a)(3) and therefore no automatic right to severance existed. Rule 13.3(a)(3) does not require a formal allegation in the charging document that the offenses were part of a common scheme or plan. *State v. Fournier,* 116 Ariz. 569, 570 P.2d 511 (App.1977).

It is well settled in Arizona that the trial court possesses broad discretion in the area of joinder and severance, and will not be reversed absent a clear abuse of discretion. *State v. Tipton,* 119 Ariz. 386, 581 P.2d 231 (1978); *State v. Roper,* 140 Ariz. 459, 682 P.2d 464 (App.1984). The test we employ to determine whether crimes may be classified as a common plan or scheme under Rule 13.3(a)(3) is not whether they were perpetrated in an identical manner, but rather whether the court perceives a visual connection between the crimes. *State v. Tipton, supra.* The visual connection is made when similarities exist where one would ordinarily expect to find differences. *State v. Roper, supra; State v. Frederick,* 129 Ariz. 269, 630 P.2d 565 (App.1981). However, we must exam-

ine not only the similarities, but also the differences between alleged acts, since the rules on joinder and severance are intended to further not only liberal joinder but liberal severance. *See State v. Roper, supra; see also State v. Henderson,* 116 Ariz. 310, 569 P.2d 252 (App.1977).

The facts of this case illustrate substantial similarities between the offenses: (1) all of the counts alleged arose from incidents involving sexual attacks or attempted attacks; (2) all of the incidents occurred in the evening hours at the homes of the victims; (3) in all but one case a gun was used to threaten the victims; (4) in all of the cases where the appellant actually gained entry into the victim's home, items of property were taken; (5) in a majority of cases the victims of sexual assault were forced to engage in oral or anal sex, or both; (6) in four of the cases the victims were forced to mount the appellant; (7) all victims described their assailant as "smelling bad"; and (8) all victims described their assailant as overweight, fat, or "pot-bellied". Not only do the differences between the crimes pale to insignificance in comparison to the similarities, but the appellant had the burden of showing, at the time of the motion, that he would be prejudiced if the trial court refused to grant separate trials. *State v. Cruz,* 137 Ariz. 541, 672 P.2d 470 (1983). Here the trial court instructed the jury to consider the evidence as it related to each separate count, thereby minimizing any potential prejudice. *See State v. Via,* 146 Ariz. 108, 704 P.2d 238 (1985).

Moreover, any prejudice occasioned by combining the multitude of offenses would not be mitigated by severance since the same evidence of prior and/or subsequent sexual assaults would be admissible in the several trials. In *State v. McFarlin,* 110 Ariz. 225, 228, 517 P.2d 87, 90 (1973), we concluded that, "[i]n those instances in which the offense charged involves the element of abnormal sex acts such as sodomy, child molesting, lewd and lascivious, etc., there is sufficient basis to accept proof of similar acts near in time to the offense charged as evidence of the accused's propensity to commit such perverted acts". The "emotional propensity" exception to the prior bad acts rule fashioned in *McFarlin* was later refined in *State v. Treadaway,* 116 Ariz. 163, 568 P.2d 1061 (1977), wherein we established the requirements of sexual aberration, similarity and nearness in time. 116 Ariz. at 166, 568 P.2d at 1064. Appellant's bad acts—eight completed and several attempted sexual assaults within a sixteen-month period—clearly fall well within the ambit of *McFarlin* and *Treadaway.* Since evidence of these acts would have been admissible at separate trials, had they been granted, severance would not have ameliorated any prejudice faced by the appellant. Therefore, the trial court did not err by refusing to grant severance.

## IDENTIFICATION

The appellant contends that the trial court erred when it allowed the victims to identify him in court. Prior to trial the appellant had moved to suppress in-court identification on the ground that an unduly suggestive photo lineup and suggestive post-lineup procedures combined to taint the subsequent in-court identification of appellant.

After appellant's arrest all of the victims were shown a photo lineup and asked to identify their assailant, if possible. These lineups were conducted by Detective Gonzales. The lineup consisted of six color photos, arranged on six separate cards. Prior to the lineup each victim was given a standard admonition that the suspect's photo might not be present and that there was no obligation to select a photo. Nonetheless, every victim chose the photo depicting the appellant.[1] The victims' confidence in their identification ranged from "positive" to tentative. After several of the identifications, Detective Gonzales told

---

1. As an additional safeguard, several victims were given a different lineup, consisting of the same photos arranged in a different sequence.

victims that they had selected "the right guy".

Pursuant to appellant's pretrial motion an extensive *Dessureault* hearing was held. *State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951, *cert. denied*, 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970). There defense counsel had the opportunity to extensively question the victims concerning the photo lineup and Detective Gonzales' statements. The trial court limited questioning to the circumstances surrounding the lineup procedure, and refused to allow examination regarding the facts of each attack, i.e., the "totality of the circumstances".

The appellant argues that the trial court's conclusion that the lineup was not unduly suggestive, and its circumscription of questioning, constitute error. As an initial matter we note that, "[t]he fairness and reliability of a challenged identification are preliminary matters for the trial court whose findings will not be overturned on appeal absent a showing of clear and manifest error." *State v. Hooper*, 145 Ariz. 538, 544, 703 P.2d 482, 488 (1985). *See State v. Schilleman*, 125 Ariz. 294, 609 P.2d 564 (1980). We find no error.

■ In *State v. Chapple*, 135 Ariz. 281, 660 P.2d 1208 (1983), we laid out a two-step analysis to determine whether suggestive pretrial identification procedures have compromised a defendant's right to due process of law. Under this analysis, the trial court must first determine whether the pretrial identification procedure was unnecessarily suggestive. Next, if the procedure is found to be unnecessarily suggestive, the court must examine "the totality of the circumstances" surrounding the identification in order to judge its reliability. *Id.* at 286, 660 P.2d at 1213. Our test enunciated in *Chapple* mirrors the United States Supreme Court's two-step analysis contained in *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), and *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

■ Turning to the facts of this case, the appellant contends that the photo lineup was unduly suggestive because he was the only person in the lineup obviously overweight—as the victims had invariably described their assailant. The appellant concedes that "[a] lineup need not be and seldom can be ideally constituted." *State v. Henderson, supra*, 116 Ariz. at 315, 569 P.2d at 257. Nonetheless, appellant urges that the lineup "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). We have viewed the photographs which constitute the lineup and do not see anything which distinguishes the appellant's photograph from the others. All share similar characteristics as to size, shape, age, hair color, hair length, facial hair, eye color, and skin tones. This case is easily distinguishable from *State v. Alexander*, 108 Ariz. 556, 503 P.2d 777 (1972) (photographic identification procedure unduly suggestive where out of 17 photos only the two depicting the defendant had been altered to include a moustache and goatee), and *State v. Henderson, supra*, (lineup unduly suggestive where made up of individuals twelve to fifteen years younger than suspect), both cited by the appellant. The lineup was not suggestive.

■ However, the appellant also claims that the post-identification comments by Detective Gonzales, to the effect that the right photograph had been chosen, fatally tainted the in-court identification. We have repeatedly condemned such remarks since they tend to bolster otherwise tenuous identifications, *see, e.g., State v. Romero*, 130 Ariz. 142, 634 P.2d 954 (1981), *State v. McDonald*, 111 Ariz. 159, 526 P.2d 698 (1974), but have consistently held that when the identification procedure is not suggestive in the first place, such subsequent comments do not taint an initially fair procedure. *State v. Romero, supra; State v. McDonald, supra; State v. Richie*, 110 Ariz. 590, 521 P.2d 1136 (1974). We have not departed from that view.

The trial court did not abuse its discretion by denying the appellant's pretrial motion or by limiting the scope of the *Dessereault* hearing. Because the lineup was not unnecessarily suggestive, we need not reach the question of reliability. *State v. Chapple, supra.*

## FINGERPRINT EVIDENCE

The appellant filed a pretrial motion to preclude the use of certain fingerprint evidence based upon the state's alleged negligent or intentional destruction of material evidence. In summary, some lifts of latent fingerprints were destroyed, some objects upon which fingerprints were found were not retained, and photographs were not taken of certain prints before they were lifted. In addition, appellant contends that he should have been allowed to make a *Willits* argument to the jury with regard to fingerprint evidence. *State v. Willits,* 96 Ariz. 184, 393 P.2d 274 (1964).[2]

A brief exposition of the relevant facts is necessary to begin our discussion. In the case of victim D lifts were taken which matched appellant's prints, but another lift was destroyed because, in the opinion of the identification technician, it lacked forensic value. In the case of victim W a palm print matching appellant's was recovered from a large glass bottle. However, the latent had granular debris inconsistent with a glass bottle. The bottle was not taken into evidence and thus could not be examined by defense experts. In all, five latents were taken from the scene, of which two were kept and three destroyed for lack of forensic value. In the case of victim C five latents were taken and retained. Two matched the appellant's prints, and these came from a window screen and window frame. The latents were not photographed, nor was the screen retained for evidence. Two other prints matched the victim's, and one remained unidentified. One latent was destroyed for lack of forensic value. In the case of vic-

tim B a latent was taken from the inside of a windowpane which positively compared to appellant's right palm. The latent was not photographed. Finally, in the case of victim V numerous prints were processed, but only one was recovered. This latent positively compared to appellant's prints.

Based upon the facts outlined above the appellant moved to suppress the state's fingerprint evidence, and once it was admitted, for permission to present a *Willits* argument. The trial court denied both requests.

■ Destruction or non-retention of evidence does not automatically entitle a defendant to the suppression of remaining evidence or to a *Willits* argument. Destruction of evidence entitles a defendant to suppression only when failure to do so would amount to a violation of due process of law. A defendant is not deprived of due process by the destruction of evidence unless the state has acted in bad faith or the defendant is prejudiced by the loss. *State v. Schilleman, supra,* 125 Ariz. at 299, 609 P.2d at 569; *see State v. Wiley,* 144 Ariz. 525, 538, 698 P.2d 1244, 1257 (1985).

■ Despite the appellant's attempt to distinguish *State v. Schilleman, supra,* it is precisely on point and governs this case. In *Schilleman* the identification technician lifted fifteen latent fingerprints from the crime scene. Later all but one were destroyed because they lacked forensic value. The remaining print was identified as the defendant's. The technician testified that he followed standard police procedures and we found no bad faith or connivance. *Id.,* 125 Ariz. at 299, 609 P.2d at 569. In this case the testimony was also that standard police procedures were followed. While we recognize that technical determinations may be subject to error, *id.,* "due process [does not] require the police to preserve indefinitely evidence after a qualified technician has concluded that it has no probative value, so that an as yet unknown de-

2. A *Willits* instruction was granted and argued with regard to a tape recording of a photograph-

ic lineup identification.

fendant may later make his own examination of the evidence." *Id.* Moreover, it is in the state's own interest to preserve all prints which might identify a criminal. *Id.*[3]

There was no bad faith. Nor can we find any reasonable possibility that the appellant was prejudiced by the destruction of lifts which were testified to as being unusable, or by the failure to retain items from which lifts were taken. Regardless of what the other lifts might have shown, the fact remains that appellant's prints were recovered at five of the victim's homes. Their probative value was not diminished by the state's actions. *Id.*

■ The appellant also submits that, if the evidence was properly admitted, he was then entitled to make a *Willits* argument to the jury. As noted previously, a *Willits* instruction was given to the jury, but the *Willits* argument was limited to a missing tape recording. The test of whether a defendant is entitled to a *Willits* argument is identical to the test for a *Willits* instruction, *viz.*, whether the defendant has proven he was prejudiced by the state's failure to preserve material evidence. *See State v. Leslie*, 147 Ariz. 38, 47, 708 P.2d 719, 728 (1985). The trial court's decision to forgo a *Willits* instruction will not be reversed absent an abuse of discretion. *State v. Reffitt*, 145 Ariz. 452, 461, 702 P.2d 681, 690 (1985). We cannot see how the state's destruction of, or failure to preserve, evidence of negligible value prejudiced the appellant. Testimony indicated that no evidence of material value was lost or destroyed, and in any case it could not have exonerated the appellant. *Cf. State v. Leslie, supra* (defendant entitled to *Willits* instruction where state failed to preserve small stains but later claimed it was blood). There was no error.

## PHOTOGRAPH OF APPELLANT

■ Appellant next argues that the trial court committed reversible error by admitting state's exhibit 74 over objection. The exhibit was a frontal photograph of the appellant standing naked, and revealed his genitals. The touchstone of admissibility for any exhibit is relevance; thus "[i]f the photographs have any bearing upon any issue in the case, they may be received although they may also have a tendency to prejudice the jury against the person who committed the offense." *State v. Mohr*, 106 Ariz. 402, 403, 476 P.2d 857, 858 (1970). That does not mean, however, that any photograph which is relevant may be admitted regardless of its prejudicial effect. *State v. Chapple, supra.* Relevance is merely the first test of admissibility. Where the offered exhibit has a capacity to incite passion or inflame the jury, "the court must go beyond the question of relevancy and consider whether the probative value of the exhibit outwieghs the danger of prejudice by admission of the exhibit." *State v. Chapple, supra*, 135 Ariz. at 288, 660 P.2d at 1215. The decision to admit such exhibits is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *State v. McCall*, 139 Ariz. 147, 157, 677 P.2d 920, 930 (1983), *cert. denied*, 467 U.S. 1220, 104 S.Ct. 2670, 81 L.Ed.2d 375 (1984).

■ Photographic evidence is relevant if it aids the jury in understanding the case. Photographs may be admitted, among other reasons, to establish identity, to corroborate state witnesses, to illustrate or explain testimony, and to corroborate the state's theory of how and why the crime was committed. *State v. Bracy*, 145 Ariz. 520, 533, 703 P.2d 464, 477 (1985). Here the disputed photograph was admitted to prove the identity of the assailant, an issue contested by the defense, and to corroborate the testimony of two witnesses (victims) that the appellant had a small penis. *See id.*

We have reviewed the photograph in issue and do not find it inflammatory. Although it reveals the appellant fully nude, it is not the kind of evidence likely to incite

---

3. In addition, since at the time the fingerprint lifts were taken there was no particular suspect, the police had absolutely no motive to alter or destroy evidence.

passion or inflame the jury. Indeed, the photograph is far less likely to inflame the jury than the simple testimony of the victims. *Cf. State v. Roscoe*, 145 Ariz. 212, 223, 700 P.2d 1312, 1323 (1985) (holding that two autopsy pictures were not particularly gruesome, and in any case the risk of prejudice was eclipsed by the sense of repugnance created by the testimony). We find no error.

## SENTENCING

The appellant challenges imposition of his sentence on two grounds: that its length is excessive, and that it is too ambiguous to execute. The appellant was sentenced as follows: Counts 1–4, concurrent terms of life imprisonment; counts 5–9, concurrent life terms consecutive to Counts 1–4; Count 10, 11.25 years consecutive to Counts 5–9; Counts 11–15, 15.75 year terms concurrent to Count 10; Count 16, 10 years concurrent to Count 10; Counts 17–23, concurrent life terms consecutive to Count 10; Counts 24–30, concurrent life terms consecutive to Counts 17–23; Counts 31–35, concurrent life terms consecutive to Counts 24–30; Counts 36–39, concurrent life terms consecutive to Counts 31–35; Counts 40–41, concurrent life terms consecutive to Counts 36–39; Counts 42–47, concurrent life terms consecutive to Counts 40–41; and Counts 48–50, concurrent life terms consecutive to Counts 42–47 —all told nine life terms (eight consecutive) plus a consecutive term of 11.25 years.

A trial court has broad discretion in sentencing. *State v. Cameron*, 146 Ariz. 210, 215, 704 P.2d 1355, 1360 (App.1985). If a sentence is within statutory limits, it will not be modified or reduced unless it clearly appears that the sentence was an abuse of discretion. *Id.* An abuse of discretion in sentencing will not be found absent arbitrariness, capriciousness, or failure to conduct adequate investigation into facts relevant to sentencing. *State v. Ramos*, 133 Ariz. 4, 7, 648 P.2d 119, 122 (1982). None-

theless, appellant contends that his sentence is excessive and should be reduced pursuant to A.R.S. § 13–4037(B).

We note first that appellant's sentence is within the statutory range. The state alleged and proved that the appellant committed the named felonies with the use or exhibition of a deadly weapon (a garden trowel or gun) while on probation, parole or work furlough, in violation of A.R.S. § 13–604.01(A) (now 604.02(A)).[4] A.R.S. § 13–604.01(A) provided for life imprisonment without possibility of parole for twenty-five years; and on all counts save 10–16 the appellant received life terms pursuant to its authority. On Counts 10–16 appellant was sentenced to presumptive terms of years pursuant to A.R.S. § 13–604.01(B) (now 604.02(B)).

 We have already decided that consecutive sentences may be imposed pursuant to A.R.S. § 13–708 if the trial judge sets forth on the record his reasons for consecutive sentences. *State v. Meeker*, 143 Ariz. 256, 693 P.2d 911 (1984). Here the trial judge stated that:

"The Court finds the following aggravating circumstances: possession and threatened use of a deadly weapon; your prior criminal convictions; your failure to benefit from past incarceration, supervision and treatment; repetitive nature of the offenses committed in these indictments; the physical, emotional harm suffered by the victims; and the total loss, total lack of remorse."

Therefore, the consecutive sentences imposed by the trial judge were within permissible statutory parameters. The fact that a sentence is prescribed by statute, however, does not conclusively establish that it is constitutional, for a penalty may be so severe that it offends the principles of contemporary society and thereby the Eighth Amendment. *State v. Mulalley*, 127 Ariz. 92, 618 P.2d 586 (1980). In evaluating whether a sentence may outrage "the moral sense of the community", *see State*

---

**4.** At the time these offenses were committed the appellant was on parole for two counts of arm-

ed robbery committed in Wisconsin.

*v. Taylor,* 82 Ariz. 289, 294, 312 P.2d 162, 166 (1957), we will evaluate the nature of the crime and the offender as well as the punishment for similar crimes in other jurisdictions. *See State v. Mulalley, supra,* 127 Ariz. at 96, 618 P.2d at 590. The issue of whether life terms as mandated by A.R.S. § 13–604.01 violate the proportionality test of *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), was recently disposed of in *State v. Cocio,* 709 P.2d 1336 (Ariz.1985). Furthermore, consecutive terms, as provided for by A.R.S. § 13–708, are justified here considering the cruelty and degradation the appellant inflicted upon the victims (two of whom were minors); the use of a dangerous weapon; and appellant's past criminal record, failure to benefit from previous treatment opportunities, and lack of remorse. *Cf. State v. Meeker, supra* (three consecutive life terms for armed robbery and aggravated assault not an abuse of discretion). The sentence was neither arbitrary nor capricious, and is not cruel or unusual. There was no abuse of discretion.

Finally, appellant claims that his sentence is unlawful because it is plagued by errors which render it too ambiguous to execute. In particular, the appellant points to two alleged errors: the double use of Count 4, and ambiguity in the punishments for Counts 10–16. Turning to the first, in the sentencing transcript the judge stated, "It [the court] finds that Counts *Four,* Six, Seven, Eight and Nine be concurrent, one with the other, but consecutive to Counts One, Two, Three and *Four* " (emphasis added). Clearly, Count Four cannot be consecutive to itself. *Cf. State v. Lujan,* 124 Ariz. 365, 604 P.2d 629 (1979) (sentence vacated where two consecutive sentences set to begin on same day). However, the sentencing order makes it plain that the court's intent was to make Counts 1–4 concurrent and Counts 5–9 concurrent but consecutive to 1–4. So interpreted, the sentence is affirmed.

Second, a problem arises with Counts 10–16 and the consecutive life terms thereafter. The judge stated, "Count Seventeen to run consecutive to Counts Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, and Sixteen". Count Ten is a consecutive term, while Counts 11–16 are concurrent terms. However, the court did not specify to which other count or counts Counts 10–16 were concurrent to—if to Counts 1–4, then Count 17 would be consecutive to both Counts 1–4 and 10; but if to Count 10, then Count 17 is consecutive to Count 10 and the life terms continue apace in consecutive order.

To our reading it is plain that the latter interpretation is the better one. By grouping Counts 10–16 together, the court meant to make Counts 11–16 concurrent to Count 10. So interpreted, the sentence is not ambiguous and is therefore affirmed.

We have reviewed the record for fundamental error, A.R.S. § 13–4035 and have found none. The judgments of conviction and sentences imposed are affirmed.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.