924 P.2d 453

**STATE of Arizona, Appellee,**

v.

**Gabriel Hurtado NIETO, Jr., Appellant.**

**No. 1 CA–CR 94–0583.**

Court of Appeals of Arizona,
Division 1,
Department A.

Feb. 22, 1996.

Redesignated as Opinion and
· Publication Ordered March 11, 1996.

Review Denied Sept. 24, 1996.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Division, and Consuelo M. Ohanesian, Assistant Attorney General, Phoenix, for Appellee.

Gail Gianasi Natale, Phoenix, for Appellant.

## OPINION

TOCI, Judge.

Gabriel Hurtado Nieto, Jr. ("defendant") appeals his conviction and sentence for one count of second-degree murder and two counts of aggravated assault. Defendant makes eight claims of error. For the reasons given below, we affirm.

### I. FACTS AND PROCEDURAL BACKGROUND

On the night of December 5, 1992, teenagers Brent Lorentz, Kevin Klammer and Clinton Hill, were walking east on Thomas Road. A vehicle, driven by Angel Mendiola, Jr., who had a shotgun in his possession, approached

them from the east. Defendant was a passenger in the front seat of the car. As the car passed the teenagers, defendant pointed the shotgun out the window at the three youths and fired one shot. The vehicle then drove off. The gunshot hit sixteen-year old Brent Lorentz, who died six days later. The other boys were not physically harmed.[1]

In June 1993, defendant was arrested at his home. He was taken to the police station, given his *Miranda* warnings and voluntarily agreed to talk to the police. Although defendant initially denied involvement in the shooting, he later confessed on tape to having shot at the three boys. He claimed, however, it was an accident. He said that he was drunk at the time, that he had no reason to shoot at the boys, that he did not think the gun was loaded, and that he only intended to scare them. The police contacted Mendiola later that afternoon. In a tape-recorded statement, Mendiola corroborated defendant's account of his own and defendant's involvement in the shooting.

Defendant was indicted on one count of first-degree murder, a class 1 felony, and two counts of aggravated assault, class 3 felonies. He was found guilty of the lesser-included offense of second-degree murder and of the aggravated assault counts. The jury found these crimes to be dangerous. Defendant was sentenced to an aggravated term of 18 years for second-degree murder and presumptive terms of 7.5 years on each count of aggravated assault, those sentences to run concurrently to each other, but consecutively to the sentence for second-degree murder. He was credited with 397 days of presentence incarceration and ordered to pay $80,237.60 in restitution and $300 in felony assessment fees. This appeal followed.

## II. DISCUSSION

On appeal, defendant argues that:

1. Defendant's federal and state constitutional rights to confront witnesses against him were violated when the court permitted introduction at trial of Mendiola's tape-recorded interview with police.

2. The trial court committed reversible error by refusing to instruct the jury on negligent homicide.

3. The trial court violated Rule 22.2, Arizona Rules of Criminal Procedure, by giving the jurors a copy of the indictment to use during their deliberations.

4. The trial court abused its discretion by admitting photographs of the crime scene taken several months later which showed gang graffiti on the curb, although such graffiti was not present at the time of the crimes.

5. The trial court violated Rule 19.1, Arizona Rules of Criminal Procedure, by varying the order of proceedings and reading the jury instructions prior to closing arguments.

6. There was prosecutorial misconduct because the state did not maintain contact with two potential witnesses.

7. The trial court erred by instructing the jury that punishment is the sole concern of the judge.

8. The trial court erred by denying a motion for judgment of acquittal on the first-degree murder charge as there was insufficient evidence of premeditation.

## A. Violation of Right to Confront Witnesses

Defendant first contends that the trial court violated his constitutional right to confront witnesses against him by admitting in evidence the tape-recorded statement of Mendiola. Mendiola was called as a witness, but asserted his Fifth Amendment right against self-incrimination. Despite the prosecutor's offer of use immunity pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") section 13–4064 (1989), Mendiola refused to testify. The trial court held him in contempt and jailed him for the duration of the trial. The court admitted the taped interview under Rule 804(b)(3), finding that the statements were against Mendiola's penal interest, otherwise had an adequate indicia of reliability, and were corroborated by other witnesses. Defendant claims this violated his constitutional rights to confront witnesses. *See Lee v. Illinois,*

---

1. Clinton Hill was later killed in an unrelated incident.

476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986).[2]

▬ Although the confrontation clause of the Sixth Amendment guarantees criminal defendants the right to confront their accusers, this right is not absolute and must sometimes give way to considerations of public policy. *State v. Ruelas,* 174 Ariz. 37, 39–40, 846 P.2d 850, 852–53 (App.1992). Public policy overrides the confrontation clause when the declarant is unavailable and his statement bears adequate "indicia of reliability." There is sufficient "indicia of reliability" if the statement either falls within a "firmly rooted" hearsay exception[3] or is supported by a "showing of particularized guarantees of trust-worthiness." *Id.* at 40, 846 P.2d at 853 (quoting *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980)). To determine whether guarantees of trustworthiness exist, courts must consider " 'the totality of circumstances . . . that surround the making of the statement and that render the declarant particularly worthy of belief.' " *State v. Luzanilla,* 179 Ariz. 391, 394, 880 P.2d 611, 614 (1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1406, 131 L.Ed.2d 293 (1995) (quoting *Idaho v. Wright,* 497 U.S. 805, 819, 110 S.Ct. 3139, 3148, 111 L.Ed.2d 638 (1990)).

Mendiola was unavailable because he asserted his Fifth Amendment right not to testify. *State v. Henry,* 176 Ariz. 569, 575, 863 P.2d 861, 867 (1993). Thus, the only issue to resolve is whether the second condition of admissibility was met. The state moved to admit Mendiola's tape-recorded interview with Detective Chapman as a declaration against interest. In that interview, Mendiola told Chapman he was driving the vehicle involved in the drive-by shooting, that defendant was the passenger in the front seat, and that they had been drinking. He said defendant told him to make a U-turn and approach the three boys, saw defendant

take the shotgun out and fire it at them, and saw the victim fall. He stated that he drove away after the shooting because he did not want "to be around there." He told the detective that defendant did not intend to shoot the victim, but "was just freaking." After admitting the incident was "terrible," Mendiola said, "I'd rather go to jail too if I have to man. Cause I was involved."

Arizona Rule of Evidence 804(b)(3) creates an exception to the hearsay rule for a declaration against interest made by an unavailable declarant. That rule defines a declaration against interest as, "[a] statement which was at the time of its making is . . . so far tended to subject [the declarant] to civil or criminal liability . . . that a reasonable man in his position would not have made the statement unless he believed it to be true."

▬ "Subjecting oneself to criminal liability qualifies as a declaration against interest." *State v. Lopez,* 159 Ariz. 52, 54, 764 P.2d 1111, 1113 (1988). Mendiola's statements did subject him to potential criminal liability for the crimes committed as an accomplice, A.R.S. section 13–301 (1989), or possibly for the separate crime of facilitation, A.R.S. section 13–1004 (1989). *See State v. Garcia,* 176 Ariz. 231, 233, 860 P.2d 498, 500 (App.1993) (defendant who was driver of car in drive-by shooting liable for aggravated assault on accomplice theory). However, Mendiola's statements not only incriminated himself, they also incriminated defendant.

▬ The United States Supreme Court in *Williamson v. United States,* 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994), recently explained the proper application of federal evidence rule 804(b)(3), the federal counterpart to the Arizona rule, to statements containing both self-inculpatory and non-self-inculpatory parts.[4] In interpreting

---

**2.** Our analysis under the Sixth Amendment and art. 2, § 24, Ariz. Const. is the same. *See State v. Pereda,* 111 Ariz. 344, 345, 529 P.2d 695, 696 (1974).

**3.** It is unclear whether the exception under 804(b)(3) is "firmly rooted" for confrontation clause purposes. Compare *United States v. Seeley,* 892 F.2d 1, 2 (1st Cir.1989) (exception is firmly rooted), with *United States v. Flores,* 985

F.2d 770 (5th Cir.1993) (not firmly rooted). The United States Supreme Court has not resolved the issue. *Williamson v. United States,* 512 U.S. 594, ——, 114 S.Ct. 2431, 2437, 129 L.Ed.2d 476 (1994).

**4.** Although *Williamson* did not specifically address confrontation clause issues, the court did note that hearsay is subject to the constraints of

Rule 804(b)(3), the Supreme Court adopted a narrow definition of "statement," holding that it includes only those declarations that are individually self-inculpatory. *Id.* at ———–———, 114 S.Ct. at 2434–35. The Court concluded that Rule 804(b)(3) "does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory." *Id.* at ———, 114 S.Ct. at 2435.

■ To determine if a statement is truly against interest requires a fact-intensive inquiry of the surrounding circumstances and each declaration must be scrutinized to determine if it is self-inculpatory in light of the totality of circumstances. *Id.* at ———, 114 S.Ct. at 2437. The court observed, "[e]ven the confessions of arrested accomplices may be admissible if they are truly self-inculpatory, rather than merely attempts to shift blame or curry favor." *Id.* at ———, 114 S.Ct. at 2436. Courts must analyze each proffered statement separately to determine whether it is truly against penal interest. *United States v. Sims,* 879 F.Supp. 828, 832 (N.D.Ill.1995). The *Williamson* court also noted that non-self-inculpatory statements might be admissible under another exception to the hearsay rule. 512 U.S. at ——— n.*, 114 S.Ct. at 2437 n.*.

■ Many of Mendiola's statements subject him to criminal liability such that a reasonable person would not have made the statements unless he believed them to be true. Consequently, they are admissible as declarations against interest under *Williamson.* Other statements appear to be non-self-inculpatory. A few directly inculpate defendant and tend to minimize Mendiola's role in the crimes. For example, Mendiola told Chapman that defendant had asked him to make a U-turn and drive by the victims, while defendant in his confession said that Mendiola had made a U-turn on his own and had not been asked him to do so. Because Mendiola's statements were made to a police officer, Mendiola might have had a motive to lie about this particular fact in order to shift blame to defendant and diminish his own involvement. *See, e.g., United States v. Ha-*

the confrontation clause. 512 U.S. at ———, 114

*zelett,* 32 F.3d 1313, 1317 (8th Cir.1994) ("statement admitting guilt and implicating another . . ., made while in custody may well be motivated by a desire to curry favor" with police and fail to qualify as statement against interest). Such statements might not be truly self-inculpatory or otherwise lack circumstantial guarantees of trustworthiness and thus should be excluded. *Sims,* 879 F.Supp. at 836.

■ To the extent that any of Mendiola's non-self-inculpatory statements were admitted and should have been excluded under *Williamson,* we find their admission harmless. An error is harmless if we can conclude, beyond a reasonable doubt, that the jury would have found the defendant guilty without the evidence. *Ruelas,* 174 Ariz. at 44, 846 P.2d at 857. The factors we look at to determine whether confrontation clause error is harmless are: the importance of the witness' testimony in the prosecution's case; whether the testimony was cumulative; the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; and the overall strength of state's case. *State v. Medina,* 178 Ariz. 570, 577, 875 P.2d 803, 810 (1994) (citing *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986)).

The alleged non-self-inculpatory statements made by Mendiola were consistent with the defendant's own statements about the crime, the testimony of other witnesses, and the physical evidence. Defendant confessed to the crimes and admitted shooting the victim. His confession to the police paralleled the majority of Mendiola's statement. The only discrepancy between the two stories was regarding who decided to make a U-turn. Mendiola claimed defendant told him to do it. Defendant claimed that Mendiola did it of his own accord. This factual conflict was not material and would not, in our view, have altered the jury's finding of guilt. Although the admission of some of Mendiola's statements may have been error under *Williamson,* we find any error to be harmless beyond a reasonable doubt.

S.Ct. at 2435.

## B. Refusal to Give Jury Instruction on Negligent Homicide

 Defendant next contends that the trial court erred in refusing to instruct the jury on negligent homicide. He claims that such an instruction was warranted based on his statements to police that the shooting was an accident. We disagree.

 Lesser-included offense instructions must be given if requested and if supported by the evidence. Ariz.R.Crim.P. 23.3; *State v. Detrich*, 178 Ariz. 380, 383, 873 P.2d 1302, 1305 (1994). The general rule is that negligent homicide is a lesser-included offense of manslaughter and the only difference between the offenses is an accused's mental state at the time of the incident. *State v. Fisher*, 141 Ariz. 227, 247, 686 P.2d 750, 770, *cert. denied*, 469 U.S. 1066, 105 S.Ct. 548, 83 L.Ed.2d 436 (1984). Manslaughter requires that a person be aware of a substantial and unjustifiable risk that his conduct will cause another's death and consciously disregard the risk. *Id.* at 248, 686 P.2d at 771. Negligent homicide is established where a person fails to perceive the substantial and unjustifiable risk. *Id.*

 The only evidence supporting defendant's assertion that he was unaware of a risk was his bare assertion that the shooting was an accident and statements that he was intoxicated. When a defendant is unaware of a substantial and unjustifiable risk solely by virtue of his or her voluntary intoxication, however, negligent homicide is not a lesser-included offense of manslaughter. *Id.* As to defendant's claim that the shooting was an accident, he also stated, "[w]hen you play with guns, there's no accident to it." Additionally, the evidence showed that defendant's conduct was intentional or at the very least reckless. He stated that he was familiar with guns and their danger and that he knew he was shooting in the direction of three people. Clearly, defendant had knowledge of the risk involved in his behavior. It was not error to refuse the negligent homicide instruction.

## C. Violation of Rule 22.2 by Giving Jurors Indictment

 Defendant argues that the trial court erred in giving the jurors a copy of the indictment for deliberations. He claims that Rule 22.2, Arizona Rules of Criminal Procedure, prohibits jurors from taking copies of the indictment into deliberations with them. He further contends that because an indictment has an aura of respectability attached to it that favors the state, allowing the jury to take a copy of it to deliberations was prejudicial to him. We disagree.

 Rule 22.2, Arizona Rules of Criminal Procedure, states:

> Upon retiring for deliberation the jurors shall take with them:
> a. Forms of verdict approved by the court, which shall not indicate in any manner whether the offense described therein is a felony or misdemeanor unless the statute upon which the charge is based directs that the jury make this determination,
> b. All written or recorded instructions given by the court,
> c. Their notes, and
> d. Such tangible evidence as the court in its discretion shall direct.

"Rule 22.2 only provides what the jury *shall* take with them to the jury room, not what they shall *only* take." *State v. Lichon*, 163 Ariz. 186, 193, 786 P.2d 1037, 1044 (App. 1989) (not error to allow jury to take VCR player into jury room in order to play videotapes as they saw fit).

In *State v. Amaya–Ruiz*, 166 Ariz. 152, 800 P.2d 1260 (1990), *cert. denied*, 500 U.S. 929, 111 S.Ct. 2044, 114 L.Ed.2d 129 (1991), "[t]he trial court submitted a copy of the indictment to the jury for use during deliberations, without deleting statutory references, felony designations, the prosecutor's signature, the words 'true bill,' or the signature of the grand jury foreman." *Id.* at 173, 800 P.2d at 1281. The defendant in that case argued that this violated Rule 21.3(b), which provides, "[t]he court shall not inform the jury which instructions, if any, are included at the request of a particular party." The defendant also argued that the indictment contained prejudicial surplusage. Our supreme

court rejected both arguments, finding that the cautionary instruction by the judge that the indictment is not evidence adequately informed the jurors and prevented them from presuming defendant's guilt. *Id.* at 174, 800 P.2d at 1282.

Although the issue in *Amaya–Ruiz* was not decided on the basis of Rule 22.2(d), the same considerations apply. Here, the trial court gave the jury a copy of the indictment prior to trial as part of their orientation materials and another after the close of evidence to use during deliberations. The indictment was sanitized, omitting statutory references, felony designations, and the foreman's signature.[5] At the beginning of trial, the court told the jury that the indictment "is not evidence of anything, and you should not attach any significance to it except to inform you of the charges against the defendant." At the end of the trial, the court again instructed the jury that the charges were not evidence and "[they] must not think the defendant is guilty just because of these charges." Under the circumstances, we find no violation of the rule.

## D. Photographs Showing Graffiti

■ Defendant claims that the trial court erred in admitting in evidence photographs of the crime scene that showed gang graffiti not present at the time of the shooting. Defendant contends that the photographs were irrelevant, prejudicial, confusing, and misleading. We disagree.

The state introduced photographs of the crime scene taken shortly after the shooting and also photographs taken of the crime scene in May of 1994. These later photographs showed gang graffiti, which was not there at the time of the crimes, on a curb. Defendant objected to the introduction of the photographs, voicing his concern that the jury might erroneously infer the crime was gang-related. The court allowed the photographs to be admitted, but advised the jurors that the graffiti had nothing to do with this case and instructed them to ignore the markings on the curb.

■ Photographic evidence is admissible if it is relevant to an issue in the case and if its probative value outweighs the danger of unfair prejudice in its admission. *State v. Day,* 148 Ariz. 490, 497, 715 P.2d 743, 750 (1986). The decision to admit photographic evidence rests within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Id.* Photographic evidence may have several permissible purposes, including "to corroborate state witnesses, to illustrate and explain testimony, and to corroborate the state's theory of how and why the homicide was committed." *State v. Castaneda,* 150 Ariz. 382, 391, 724 P.2d 1, 10 (1986). Here, the photographs served all of the above purposes and were probative of issues in the case. Further, we do not find them to be inflammatory. The judge carefully instructed the jury to disregard the graffiti, thereby minimizing any possible prejudicial effect they may have had. We find no abuse of discretion in admitting the photographs.

## E. Varying Order of Proceedings

■ Defendant contends that the trial court erred by giving final instructions to the jury before closing arguments. Rule 19.1, Arizona Rules of Criminal Procedure, sets forth the order of a trial "unless otherwise directed by the court." The rule states the parties may present closing arguments and "[t]he judge shall then charge the jury." Ariz.R.Crim.P. 19.1(7) & (8).

■ The order of conduct of trial is up to the sound discretion of the judge. *State v. Spratt,* 126 Ariz. 184, 187, 613 P.2d 848, 851 (App.1980). Moreover, Rule 19.1 contemplates a different order of proceedings than that specifically set forth in the rule. *State v. Guerrero,* 159 Ariz. 568, 571, 769 P.2d 1014, 1017 (1989). We see no prejudice to defendant by altering the order of the trial in this manner and find no abuse of discretion.

## F. State's Failure to Maintain Contact with Witnesses

■ Defendant claims that the prosecution engaged in misconduct by failing to keep

5. The words "A True Bill" were typed on the signature line.

in contact with two potential witnesses to the shooting. He claims that the police initially interviewed the witnesses near the crime scene and did not make an effort to keep in contact with either of these individuals. By the time of trial, neither potential witness could be located. Defendant contends that these witnesses were potentially exculpatory and the state's failure to maintain contact with them violated his constitutional rights. We hold that there was no misconduct or violation of defendant's rights.

■■■ A defendant has a due process and Sixth Amendment right to obtain the testimony of witnesses and compel their attendance. *Washington v. Texas*, 388 U.S. 14, 18–19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967). The defendant's right to compulsory process includes the right to "formulate his defense uninhibited by government conduct that, in effect, prevents him from interviewing witnesses who may be involved and from determining whether he will subpoena and call them in his defense." *State v. Ferguson*, 149 Ariz. 200, 204, 717 P.2d 879, 883 (1986) (quoting *United States v. Tsutagawa*, 500 F.2d 420, 423 (9th Cir.1974)).

■■■ In the absence of a showing that potential witnesses for the defense were made unavailable through the suggestion, procurement, or negligence of the state, the state is under no obligation to look for, or produce, such witnesses. *Ferguson*, 149 Ariz. at 204, 717 P.2d at 883; *State v. Vierra*, 163 Ariz. 4, 5, 785 P.2d 573, 574 (App.1989). Moreover, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *State v. Serna*, 163 Ariz. 260, 264, 787 P.2d 1056, 1060 (1990), *cert. denied*, 502 U.S. 875, 112 S.Ct. 214, 116 L.Ed.2d 172 (1991) (quoting *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988)) (no due process violation where state deported potentially material witness without interviewing him, because no showing of bad faith).

Here, nothing in the record suggests that either witness would have given potentially exculpatory testimony for defendant. There is no evidence the state either intentionally or negligently prevented defendant from interviewing or procuring the witnesses for trial, nor is there any evidence of bad faith on the part of the police. Defendant's constitutional rights have not been violated.

### G. Instruction Regarding Judge's Role in Punishment

■■■ Defendant argues that the trial court erred in instructing the jury that punishment was solely for the judge to determine. He claims that the instruction was misleading because if convicted of first-degree murder, the judge had no discretion to sentence defendant and was required to impose the statutorily mandated life sentence. We disagree.

■■■ "In Arizona, the trial court, not the jury determines matters of punishment." *State v. Allie*, 147 Ariz. 320, 326, 710 P.2d 430, 436 (1985). [J]uries are not to consider the consequences of their verdicts ... and "[i]nformation regarding the consequences of a verdict is irrelevant to the jury's task." *State v. Cornell*, 179 Ariz. 314, 327, 878 P.2d 1352, 1365 (1994) (quoting *Shannon v. United States*, 512 U.S. 573, ——, 114 S.Ct. 2419, 2421, 129 L.Ed.2d 459 (1994)). Instructing the jury that they are not to be concerned with sentencing consequences is not error "[w]here an instruction merely advises the jury not to consider the possible punishment and neither directly nor indirectly suggests that defendant, if convicted, would be treated with leniency...." *Allie*, 147 Ariz. at 326, 710 P.2d at 436. The trial court gave a standard jury instruction informing the jury that their sole concern was the guilt or innocence of defendant, not the possible punishment, which was to be decided by the judge. The instruction did not prejudice defendant. We find no error in the trial court's instruction to the jury.

### H. Denial of Judgment of Acquittal on First–Degree Murder

■■■ Finally, defendant argues that the trial court erred in denying his motion for judgment of acquittal on first-degree murder. He alleges there was insufficient evidence of premeditation under A.R.S. sections 13–

1101(1) (1989) and 13–1105(A)(1) (1989). We hold that the trial court did not err in denying the motion.

■■■■■ To prove premeditation, the state must show that the "defendant made a decision to kill prior to the act of killing." *State v. Kreps*, 146 Ariz. 446, 449, 706 P.2d 1213, 1216 (1985). "The necessary premeditation, however, may be as instantaneous as successive thoughts of the mind and may be proven by either direct or circumstantial evidence." *Id.* Our review of the record supports the trial court's determination that there was sufficient evidence from which a reasonable person could find that defendant premeditated the murder of Brent Lorentz.

■■ Moreover, even if the court erred in denying the motion, the error was harmless beyond a reasonable doubt. Our supreme court has held that where a crime is divided into degrees and the evidence is insufficient to convict on the higher degree charged, it is error to deny a motion for judgment of acquittal of the higher offense. *State v. Franklin*, 130 Ariz. 291, 293, 635 P.2d 1213, 1215 (1981). Where the defendant is convicted of the lesser offense and the facts adduced at trial clearly support the conviction, however, the error is harmless beyond a reasonable doubt. *Id.* at 293–94, 635 P.2d at 1215–16; *see also State v. Just*, 138 Ariz. 534, 546, 675 P.2d 1353, 1355 (App.1983) (even if trial court erroneously denied motion for judgment of acquittal on first degree murder, where strong evidence of second-degree murder of which defendant convicted, error harmless beyond reasonable doubt). We find no reversible error.

### III. CONCLUSION

We have reviewed the record for fundamental error and find none. A.R.S. § 13–4035. The convictions and sentences are affirmed.

CONTRERAS, P.J., and WEISBERG, J., concur.