NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DIMICA HICKS, *Appellant.*

Nos. 1 CA-CR 15-0447; 1 CA-CR 15-0449 (Cons.)
FILED 7-21-2016

Appeal from the Superior Court in Maricopa County
Nos.  CR2014-134202-001; CR2011-138285-001
The Honorable Charles Donofrio, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Christopher M. DeRose
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jeffrey L. Force
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Kent E. Cattani joined.

---

**H O W E**, Judge:

**¶1**        Dimica Hicks appeals her convictions and sentences for four counts of aggravated driving under the influence ("DUI") and violation of probation in a prior case. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**        One July afternoon in 2014, Juventino[1] and his son Orlando stopped to get gas. When Juventino was pulling out of the gas station parking lot, he saw another car "driving really . . . fast towards" him. He honked his car horn several times, but the driver did not stop. The car hit his car on the right front passenger side. Juventino saw a woman, later identified as Hicks, get out of the driver's side of the car; inside the car was a five-year-old child.

**¶3**        Hicks angrily asked Juventino whether he had insurance; he provided it to her. Because Juventino understood little English, Orlando talked with Hicks. Orlando told Hicks that she was at fault and that "maybe she had been drinking, because she smelled of alcohol." Hicks responded that she was taking asthma medicine and that was why she smelled. Hicks got mad and started pushing Orlando. When Juventino tried to intervene, she began punching him. Believing that she was being assaulted, Hicks called the police.

**¶4**        The police arrived as Hicks was trying to punch Juventino. The officers parked their car and attempted to separate Hicks, Juventino, and Orlando. The officers put Hicks in a patrol car, where she was very "aggressive and disorderly" and "kicked at the plexiglass separator" and the car door. When an officer opened the car door, Hicks threw up. He smelled alcohol coming from her.

---

[1]        We use the victims' first names to protect their privacy. *State v. Maldonado*, 206 Ariz. 339, 341 ¶ 2 n.1, 78 P.3d 1060, 1062 n.1 (App. 2003).

¶5 Another officer arrived at the scene and talked with the two victims; they identified Hicks as the driver. Hicks advised the officer that at the time of the collision, she was in the driver's seat and the car was running, but the car was not moving. She also said that her son and sister were in the car with her. This officer conducted a DUI investigation and asked Hicks whether she had been drinking. Hicks told him that she had a "few seven ounce beers and a shot of brandy." The officer asked Hicks to perform field sobriety tests, and because she failed the tests, the officer arrested her.

¶6 Hicks was taken to a DUI processing van and had her blood drawn. Meanwhile, another officer checked Hicks' driver's license status and learned that her privileges had been revoked and suspended. While in the DUI processing van, Hicks experienced mood swings, from being cooperative to crying and using profanities and racial slurs directed at an officer. Hicks' blood alcohol concentration ("BAC") level was later determined to be 0.125. The State charged Hicks with aggravated DUI while her driver's license was revoked and suspended, aggravated DUI with a BAC of 0.08 or more while her driver's license was revoked and suspended, aggravated DUI with a child under 15 years old in the car, and aggravated DUI with a BAC of 0.08 or more with a child under 15 years old in the car.

¶7 Before trial, Hicks filed a supplemental disclosure statement, indicating that her sister would refuse to testify and that Hicks may have to submit evidence on the basis that the "declarant [was] not available." Six months after the incident, Hicks' sister had told a defense investigator that she was the driver the day of the incident, but left because there "may be an active warrant for her arrest" and "the police may be called." Hicks attached a motor vehicle record indicating that her sister's license had been previously suspended and remained suspended.

¶8 At trial, Hicks explained that she had subpoenaed her sister to testify, but her sister had asserted her Fifth Amendment right against self-incrimination. Because Hicks' sister's driver's license had been previously suspended and was suspended on the day of the incident, after an in-camera hearing, the trial court found that Hicks' sister had a Fifth Amendment right not to testify. Hicks consequently moved for the investigator to introduce her sister's statement under Arizona Rule of Evidence 804 for admission of a hearsay statement against the declarant's interest. The court denied her motion because, although her sister was unavailable and the statement was sufficiently self-incriminating, Hicks had not proved that the statement contained sufficient indicia of reliability for admissibility under Rule 804.

¶9        After the State rested, the court read to the jury a stipulation that on the date of the incident, Hicks' driver's license had been suspended and revoked; that the motor vehicle department had mailed six notices to her last known address; and that she knew or should have known that her driving privilege was suspended and revoked on the date of the incident. The defense first called Hicks' husband's friend and coworker as a witness. He testified that he pulled into the gas station that day and saw an upset Hicks talking with her sister and a young man.

¶10        Hicks testified that she had three prior felony convictions and was on probation for theft of a means of transportation. Hicks also testified that the car involved in the incident belonged to her, but that her license was suspended, so she did not drive, her sister did. She further testified that after she and her sister pulled into the gas station, her sister went into the store and she sat in the car. She was talking on the phone when Juventino's car hit hers. Her sister then moved the car to a parking spot while she talked with Juventino and Orlando.

¶11        Hicks also testified that as Juventino was looking for his insurance papers, she was talking to her sister. Hicks further testified that her sister left after the police arrived because they told everyone at the scene that if everyone did not leave, they would be arrested. After her testimony, Hicks renewed her motion to introduce her sister's statement, arguing that her testimony corroborated her sister's statement and clearly indicated the statement's trustworthiness. The court denied the motion.

¶12        The jury found Hicks guilty of all four aggravated DUI charges. Hicks moved for a new trial, arguing that her due process rights were violated because the trial court erred in precluding her sister's out-of-court statement. The court denied the motion. The court sentenced Hicks to presumptive and concurrent terms of 4.5 years' imprisonment for the two counts of aggravated DUI with a suspended license and 1.75 years' imprisonment for the two counts of aggravated DUI with a minor child. The court also reinstated her probation for her prior theft of means of transportation conviction for three years upon release from prison. Hicks timely appealed.

## DISCUSSION

¶13        Hicks argues that the trial court erred in precluding her sister's hearsay statement because the statement was admissible under the statements-against-interest hearsay exception. A trial court "has considerable discretion in determining the relevance and admissibility of

evidence," and we "will not disturb its ruling absent a clear abuse of discretion." *State v. Amaya–Ruiz,* 166 Ariz. 152, 167, 800 P.2d 1260, 1275 (1990). An abuse of discretion is "an exercise of discretion which is manifestly unreasonable, exercised on untenable grounds or for untenable reasons." *State v. Woody*, 173 Ariz. 561, 563, 845 P.2d 487, 489 (App. 1992). Because the evidence does not indicate that Hicks' sister's statement was trustworthy, the trial court did not err in precluding it.

¶14 Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ariz. R. Evid. 801(c). A hearsay statement is inadmissible unless it falls within certain exceptions. *See* Ariz. R. Evid. 803–04. One such exception is for statements against interest. Ariz. R. Evid. 804. The proponent may offer such a statement if she shows that (1) the declarant is unavailable, (2) the statement tended to subject the declarant to criminal liability at the time the statement was made such "that a reasonable person in the declarant's position would not have made the statement unless believing it to be true," and (3) "corroborating circumstances clearly indicate the trustworthiness of the statement." Ariz. R. Evid. 804(b)(3).

¶15 The parties here dispute only whether Hicks met the third requirement for admission of Hicks' sister's statement. To determine whether guarantees of trustworthiness exist, courts must consider the totality of the circumstances surrounding the making of the statement that render the declarant particularly worth of belief. *State v. Nieto*, 186 Ariz. 449, 459, 924 P.2d 453, 463 (App. 1996). Factors to consider in determining whether a statement demonstrates sufficient trustworthiness include: (1) the existence of corroborating and contradictory evidence; (2) the relationship between the declarant and the listener; (3) the relationship between the declarant and the defendant; (4) the number of times the statement is made; (5) the time that has passed between the event at issue and the making of the statement; (6) whether the declarant will benefit from the statement; and (7) the psychological and physical environment surrounding the making of the statement. *State v. LaGrand*, 153 Ariz. 21, 27–28, 734 P.2d 563, 569–70 (1987). Because credibility questions traditionally fall within the jury's province, a court should "examine any evidence that corroborates or contradicts the statement to find whether a reasonable person could conclude that the statement is true." *State v. Machado*, 226 Ariz. 281, 285 ¶ 21, 246 P.3d 632, 636 (2011) (internal quotation marks and citation omitted).

¶16 Here, a reasonable person would not believe that Hicks' sister's alleged statement was true. Analyzing the corroborating and

conflicting evidence, Hicks' sister's alleged statement that she was the driver would support Hicks' testimony that she was not the driver. Her statement is supported by a witness' testimony that he saw Hicks talking to her sister at the scene. But the contradictory evidence is overwhelming. Juventino and Orlando testified that they saw Hicks getting out of the driver's side after the collision occurred, Hicks and her son were the car's sole occupants, and neither Juventino nor Orlando saw Hicks' sister at the scene. The contradictory evidence also includes Hicks' telling an officer at the scene that she was driving but not that anyone else was driving. Further, none of the officers who responded to the scene testified that they saw or talked to Hicks' sister.

¶17 Other factors weigh against the statement's trustworthiness as well. The declarant is Hicks' sister, rendering her statement "less trustworthy because such a [family] bond may motivate the declarant to fabricate [her] story." *LaGrand*, 153 Ariz. at 27–28, 734 P.2d at 569–70. Further, although Hicks' sister would not have benefited from the statement, she made the statement only once to a defense investigator six months after the incident. Moreover, Hicks' testimony about her sister's presence contradicted her sister's alleged statement to the investigator. Hicks testified that her sister left *after* the police arrived because they told everyone to leave, but Hicks' sister explained to the investigator that she left *before* the police arrived because she had an outstanding warrant and the police "may be" called. Consequently, on balance, the corroborating and conflicting evidence would not permit a reasonable person to believe that Hicks' sister's alleged statement was true. Accordingly, the trial court acted within its discretion in excluding Hicks' sister's alleged statement.

## CONCLUSION

¶18 For the foregoing reasons, we affirm.



Ruth A. Willingham · Clerk of the Court
FILED: AA