772 P.2d 1130

**STATE of Arizona, Appellee,**

v.

**John Henry BAILEY, Appellant.**

**No. CR–87–0094–AP.**

Supreme Court of Arizona, En Banc.

April 13, 1989.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Paul J. McMurdie, Asst. Attys. Gen., Phoenix, for appellee.

Bernini & Sattler by Deborah A. Bernini, Tucson, for appellant.

MOELLER, Justice.

## JURISDICTION

Defendant John Henry Bailey appeals from a judgment finding him guilty of one count of first degree murder, three counts of attempted armed robbery, and three counts of kidnapping. The murder count was a felony murder. The trial court did not undertake to determine whether defendant was death-qualified under *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), and *Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). The trial court found one statutory aggravating circumstance under A.R.S. § 13–703, pecuniary gain. Regardless of whether the defendant was death-qualified under *Enmund/Tison,* the judge found that the accidental discharge of the weapon and defendant's genuine remorse constituted sufficient mitigation to outweigh imposition of the death penalty. He was sentenced to life imprisonment on the murder count and to aggravated terms of years on the remaining counts, all sentences to be served concurrently. We have jurisdiction pursuant to A.R.S. § 13–4031 and article 6, § 5(3) of the Arizona Constitution.

## QUESTIONS PRESENTED

1. Whether co-defendant's suggestion that defendant had previously served time in prison was so prejudicial that the trial court should have granted a mistrial.

2. Whether the trial court abused its discretion by admitting into evidence three photographs of the victim.

3. Whether the trial court erred by not instructing the jury on second-degree murder and manslaughter.

4. Whether the state violated the rule in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), by using a peremptory challenge to strike the only black person from the jury panel.

## FACTS

The murder victim is Regina Slocum, who was the assistant manager of a Wendy's restaurant in Tucson. At approximately 1:00 a.m. on June 29, 1986, she and two of her co-workers, David Murray and Kelly Tech, locked the restaurant and began to leave. David and Kelly had just entered David's car when a masked man pointed a gun through the car window and instructed them to get out and crawl back toward the Wendy's. They crawled to the door where another masked man had brought the victim, Regina, from her car. The masked men instructed the victim to open the door and they all went inside.

Inside the restaurant, David and Kelly knelt on the floor near the salad bar. Regina stood near the door of the trash closet. One of the masked men said, "watch her." The defendant became startled and shot Regina. She fell to the ground and the defendant said, "[g]et up, bitch. You're not hurt. You have to tell me the combination to the safe." Regina did not move. The two men then asked David and Kelly if they knew the combination to the safe. They responded that they did not and the men left. After the men left, David and Kelly called the police.

At trial, defendant's girlfriend, Catherine Withrow, testified to the following. On the evening of June 28, 1986, defendant was living with her. At approximately 4:00 p.m., Maxwell (Bailey's co-defendant) came to her home, talked with defendant and then left. Defendant then told her that he would be leaving later to make "some quick money."

At approximately 8:00 p.m., Maxwell returned to Withrow's home. Defendant gave Withrow a ski cap and had her cut holes in it for his eyes. Defendant thought the holes were too big and that his eyes were visible; Maxwell responded that the cap was fine. Maxwell and defendant left at approximately 8:30 p.m.

Late that night, defendant returned to Withrow's apartment and woke her up. He was visibly upset. Defendant told her that "it had gone bad" and that the gun went off and he had shot a lady at the Wendy's. Defendant placed his clothes and shoes in two garbage bags. While changing his clothes, defendant had Withrow wipe off the gun and shells to remove

any fingerprints. He then wrapped the gun and shells in his bandana.

Withrow and defendant left the house in defendant's car. They drove out in the desert where defendant threw the bandana containing the gun and shells. They then drove to a dumpster where defendant threw away his clothes. When they returned home, defendant told Withrow what had happened that night at Wendy's. Withrow later led a Pima County Sheriff's officer to the gun. A ballistics examination revealed it to be the gun that killed the victim.

## DISCUSSION

### A. Motion for Mistrial

Defendant urges us to reverse his conviction and remand for a new trial because the trial court denied his motion for a mistrial. The trial court has broad discretion to decide whether a mistrial is warranted. *State v. Ramirez*, 116 Ariz. 259, 265, 569 P.2d 201, 207 (1977). The trial court has this broad discretion because the trial judge is in the best position "to sense ... the possible effect ... [the objectionable statement] had on the jury and the trial." *State v. Koch*, 138 Ariz. 99, 101, 673 P.2d 297, 299 (1983). We will only reverse a trial court's decision denying a mistrial when it has clearly abused its discretion. *State v. Hallman*, 137 Ariz. 31, 37, 668 P.2d 874, 880 (1983); *State v. Trotter*, 110 Ariz. 61, 65, 514 P.2d 1249, 1253 (1973).

The non-responsive remarks to which defendant objects were made by his co-defendant while he was being examined by his counsel. Defendant contends that the remarks implied that defendant had previously served time in prison. Defendant's trial counsel stated that he specifically chose not to call defendant to the stand because he did not want the jury to become aware of defendant's prior felony convictions. The remarks came about as follows:

Q. [BY MR TAYLOR, counsel for co-defendant Maxwell:] What kind of social life did you have during this time?

A. My social life was based around what I was going to school for. And

after I had been in school for a while riding ... a bike, I didn't have no transportation. So it caused me to drop out of school.

So I dropped out of school and continued to work and basically what I was doing was helping people. I was helping people who were considered, I guess, as people will consider you if you've been to prison ... as low achievers. These people were low achievers. So I was basically helping people get jobs.

Q. Where at?

A. At Able Earth and at Drake Corporation.

Q. Did you make attempts to help Mr. Bailey get a job at Able Earth?

A. Yes, sir, I did.

Reporter's Transcript, 2/27/87 at 38–39.

Immediately after this testimony, the co-defendant explained that he talked to the defendant about a job with Able Earth "because he was a big guy and our construction company needed a big guy that was willing to work." Reporter's Transcript, 2/27/87 at 40. At the conclusion of the co-defendant's direct examination, defense counsel moved for a mistrial. The motion was denied. To decide whether to grant a mistrial, the trial court should consider:

(1) Whether the remarks called to the attention of the jurors matters that they would not be justified in considering in determining their verdict, and

(2) Whether the probability that the jurors, under the circumstances of the particular case, were influenced by the remarks.

*Hallman*, 137 Ariz. at 37, 668 P.2d at 880. This inquiry is designed to assist the judge in deciding whether the remarks were improper and, if so, whether the remarks denied defendant a fair trial. *Id.*

In *State v. Cruz*, 137 Ariz. 541, 546, 672 P.2d 470, 475 (1983), we concluded that a co-defendant's testimony was so prejudicial that a mistrial was necessary. *Cruz*, however, is distinguishable because the nature of Cruz's co-defendant's statements were much more serious and damaging than here. There, the co-defendant's testimony

in the murder trial suggested that Cruz was "linked with organized crime and that he had, in the past, hired people to commit crimes, including murder." *Id.* Here, at most, Maxwell's statement implied that defendant had previously been imprisoned, with no discussion of the duration or reasons for his imprisonment.

■ Because the defendant did not testify, his prior felony convictions were inadmissible, as was any evidence showing he had spent time in prison. To the extent the co-defendant's rambling answer suggested that defendant had served time in prison, it should not have been presented to the jury. Thus, the first prong of the *Hallman* test was arguably satisfied.

Under the second prong of the *Hallman* analysis, we examine whether the trial judge abused his discretion by determining that, under the circumstances of the case, the jury was not so influenced by the remarks that defendant was denied a fair trial. The statements were fairly innocuous. Maxwell never stated that defendant served time in prison; the jury would have to *infer* that defendant was previously imprisoned. Even if the members of the jury reached that conclusion, they would have no idea how much time he spent in prison or for what crime. The jury had already properly heard testimony that the co-defendant had two prior felony convictions.

Considering the relatively innocuous nature of Maxwell's remarks at the trial in the context of the entirety of his testimony, and the fact that the trial judge was in the best position to gauge the impact of the statements on the jury, we hold that the trial judge did not abuse his discretion by denying defendant's motion for a mistrial.

## B. Admissibility of Photographs

Defendant contends that he was unfairly prejudiced by the admission into evidence of three photographs of the victim. The trial judge has discretion to decide whether to admit photographs. *State v. Moorman*, 154 Ariz. 578, 586, 744 P.2d 679, 687 (1987). We will not reverse the judge's decision absent a clear abuse of that discretion. *Id.*

■ The trial judge must use a two-part analysis to determine whether photographic evidence is admissible. First, as with all evidence, he must determine if the photographs are relevant to an issue in the case. Photographic evidence is relevant if it aids the jury in understanding any issue in dispute. *State v. Day*, 148 Ariz. 490, 497, 715 P.2d 743, 750 (1986). Second, he must inquire whether the offered photographs would tend to incite passion or inflame the jury. *Moorman*, 154 Ariz. at 586, 744 P.2d at 687; *State v. Chapple*, 135 Ariz. 281, 288–90, 660 P.2d 1208, 1215–17 (1983). If the photographs would tend to incite passion or inflame the jury, the court must balance the probative value of the exhibits against any danger of unfair prejudice created by their admission. *Moorman*, 154 Ariz. at 586, 744 P.2d at 687.

■ Here, the state introduced three photographs of the victim, none of which were gruesome. The first photograph, exhibit number three, shows the victim's hand with the shell casing under one of her fingers. The photograph is not unnatural or shocking—it is simply a picture of a hand and a shell casing. Both the shell casing and its location were relevant to issues in the case. The shell itself is important because ballistics tests demonstrated that it came from the gun found in the desert. The location of the shell is important because it shows the shell was found at the scene, right next to the victim. This photograph is not unfairly prejudicial—it does not contain graphic depictions of bloody wounds or other inflammatory images. The trial court did not abuse its discretion by admitting exhibit number three.

The next photograph, exhibit number four, is a view of the interior of the Wendy's restaurant where the murder occurred. In this picture, the lower half of the victim is shown near the rear door. This photograph, like exhibit number three, is not gruesome in any way, but merely locates the victim in a particular spot in the restaurant. The location of the victim by the photograph is relevant because it cor-

roborates the state's chief witness's testimony. Because the photograph is relevant and not unfairly prejudicial, we hold that the court properly admitted exhibit number four into evidence.

The last photograph to which defendant objects, exhibit number fourteen, is a photograph of the victim's back. The photograph shows a hole in the victim's blouse and powder burns from the bullet. Because of the direction the gun was pointed when fired, the bullet traveled up the blouse and entered the victim in the back of the head; the entry wound was completely covered by the victim's hair and is not visible in the photograph. This photograph is relevant because it corroborates testimony concerning the angle of the gunshot and the position of the victim when she was shot. The photograph is not unfairly prejudicial. Although two small spots of blood are shown, it is by no means a gory photograph. Thus, the probative value of the photograph outweighs any unfair prejudice resulting from its admission. The court did not abuse its discretion in admitting exhibit number fourteen into evidence.

## C. Jury Instructions

Defendant next contends that the trial judge erred by not giving jury instructions on two lesser-included offenses—second-degree murder and manslaughter. A defendant is entitled to instructions on lesser-included offenses if the evidence could support a lesser charge. *State v. Moreno*, 128 Ariz. 257, 261, 625 P.2d 320, 324 (1981). This, however, is a felony-murder case. We have previously held that when the evidence only supports a felony-murder conviction, as is the case here, a defendant is not entitled to instructions on second-degree murder and manslaughter. *State v. LaGrand (Walter)*, 153 Ariz. 21, 29–30, 734 P.2d 563, 571–72, *cert. denied*, —— U.S. ——, 108 S.Ct. 207, 98 L.Ed.2d 158 (1987); *State v. Martinez–Villareal*, 145 Ariz. 441, 446–47, 702 P.2d 670, 675–76, *cert. denied*, 474 U.S. 975, 106 S.Ct. 339, 88 L.Ed.2d 324 (1985). The jury was not instructed on premeditated murder—only on felony murder. Thus, we find no error.

## D. Peremptory Challenges

The state exercised a peremptory challenge to excuse the only black person from the jury panel. Defendant argues that this peremptory strike violated *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 2d 69 (1986). In *Batson*, the Court held that the equal protection clause forbids the prosecutor from striking potential jurors solely on account of their race. *Id.* at 89, 106 S.Ct. at 1719, 90 L.Ed.2d at 83. Similarly, we have held that the right to an impartial jury under the sixth amendment to the United States Constitution forbids such discriminatory challenges. *State v. Superior Court (Gardner)*, 157 Ariz. 541, 760 P.2d 541 (1988).

A defendant alleging a *Batson* violation must make out a prima facie case of purposeful discrimination. He can do so through evidence of the prosecutor's use of peremptory challenges. "Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors." *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. However, this "explanation need not rise to the level justifying exercise of a challenge for cause." *Id.*

In the case before us, defendant made out a prima facie case of a *Batson* violation. Defendant is black and the prosecutor used a peremptory challenge to strike the only black person on the jury panel. Thus, the burden shifted to the state to provide a racially neutral explanation for the strike. The prosecutor explained that he struck the potential juror because he had been convicted of misdemeanor assault the previous year in city court and because he had been indicted for burglary by the prosecutor's office, which had placed the juror in a diversion program. The prosecutor also pointed out that the juror had himself requested that he be excused for job purposes. The trial court properly accepted the prosecutor's racially-neutral explanation. We find no error.

## DISPOSITION

Defendant has demonstrated no error. Pursuant to A.R.S. § 13–4035 we have reviewed the entire record for fundamental error; we have found none.

Affirmed.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and CORCORAN, JJ., concur.