NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

KARI ANN MANWEILER, *Appellant.*

No. 1 CA-CR 15-0175
FILED 4-26-2016

---

Appeal from the Superior Court in Mohave County
No. S8015CR201400202
The Honorable Steven F. Conn, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jillian Francis
*Counsel for Appellee*

Mohave County Legal Advocate's Office, Kingman
By Jill L. Evans
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Patricia K. Norris delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Judge Maurice Portley joined.

---

**N O R R I S**, Judge:

¶1        Kari Ann Manweiler appeals her convictions and sentences for possession of dangerous drugs, possession of drug paraphernalia, conspiracy to sell dangerous drugs, and two counts of sale of dangerous drugs.  She argues the superior court improperly admitted prejudicial testimony and the prosecutor intentionally deprived her of her right to due process and a fair trial by intentionally arguing facts not in evidence.  We disagree with these arguments and affirm Manweiler's convictions and sentences.

## FACTS AND PROCEDURAL BACKGROUND

¶2        In a police-controlled buy, an informant purchased about one-quarter ounce of methamphetamine from Manweiler on February 5, 2014, and about one-half ounce the following day.  On February 7, police executed a search warrant at Manweiler's home in Bullhead City and found $210 in marked bills used for the drug buys in her wallet.

¶3        L.M. and A.A. were at Manweiler's home during the search.  L.M. told police that Manweiler had just sold her 2.4 grams of methamphetamine, and A.A. told police he had purchased an "eight-ball" of methamphetamine from Manweiler the night before.[1]

¶4        At trial, when cross-examining a police corporal in the State's case-in-chief, defense counsel played a recording of the controlled buys.  The corporal testified he recognized Manweiler's voice on the recording.  Defense counsel objected to the corporal's statement because he was not "a speech recognition expert."  The superior court overruled the objection, noting defense counsel had asked the corporal to "point out whenever he

---

[1]At trial, however, L.M. and A.A. both denied purchasing the methamphetamine from Manweiler; they testified they could not remember telling police otherwise.

hears something." On redirect, the prosecutor asked the corporal how he could be "confident" that he had heard Manweiler's voice on the recording. He answered, "[b]ecause I know Kari. I've dealt with her for many years, I've arrested her numerous times, I have had contacts with her, I'm going to estimate a dozen times in the last 8 to 10 years" and had spent "quite some time" interviewing her after executing the search warrant.[2]

¶5        Defense counsel did not object or ask the superior court to strike this testimony, but the following day, after the State rested, defense counsel, in "an overabundance of caution," asked for a mistrial "because of the reference to the prior arrests." The superior court refused to grant a mistrial, explaining:

> So, if in fact he has had prior contact with the defendant, then he is more likely to recognize her voice. If he has actually arrested her in the past, that would be the type of contact that would be likely to involve more interaction than a traffic citation, or something like that. So, I think the fact that his contact was in the context of an arrest would be relevant.

¶6        During the defense case-in-chief, defense counsel questioned Manweiler about her past drug use and police contacts. Manweiler testified she was an "ex-meth user" and had sold drugs in the past. But, she testified she had not sold drugs recently or to the informant, to L.M., or to A.A., and any drug paraphernalia found in her home was not hers. She also testified she "[didn't] believe" she had met the corporal before February 7, 2014, and had never been arrested before.

¶7        In the State's rebuttal case, the prosecutor recalled the corporal and asked him about the first time he had contact with Manweiler. The corporal responded, "I don't know the exact date. It was approximately 8 to 10 years ago. . . . We got a call from an adjoining room saying they could smell what was methamphetamine either being used or cooked in the room next to them." He said he arrived on the scene and arrested Manweiler, but other detectives handled any further investigation. He believed the other detectives released Manweiler without booking her.

---

[2]On recross, defense counsel asked the corporal, "Corporal, you've never actually arrested my client prior to this incident. Correct?" He responded, "No. I have."

¶8        The superior court concluded the best way to handle the corporal's testimony about his prior contacts with Manweiler was to give the following limiting instruction:

> Evidence was presented in this case suggesting that the defendant has had prior contact with law enforcement. Such evidence was not presented and may not be considered by you to conclude that she is a bad person, or that she is disposed to engage in criminal activity. Such evidence was presented and may be considered by you only for the limited purpose of determining whether any such prior contact would have enabled the officer to recognize her voice.

¶9        The jury convicted Manweiler as noted above. *See supra* ¶ 1.

## DISCUSSION

I.      The Corporal's Testimony

      A.      Motion for Mistrial

¶10        Manweiler argues the superior court abused its discretion in denying her motion for a mistrial after it admitted prejudicial testimony concerning her previous contacts with police. *State v. Jones,* 197 Ariz. 290, 304, ¶ 32, 4 P.3d 345, 359 (2000) (reviewing superior court's denial of a motion for mistrial for abuse of discretion). We will only reverse a superior court's denial of a mistrial if "there is a 'reasonable probability that the verdict would have been different had the [improper] evidence not been admitted.'" *State v. Dann,* 205 Ariz. 557, 570, ¶ 44, 74 P.3d 231, 244 (2003) (citation omitted). In determining whether to grant a mistrial, a court should consider whether the testimony called the jurors' attention to matters they would not be justified in considering in reaching a verdict and the probability under the circumstances that the testimony influenced the jurors. *State v. Bailey*, 160 Ariz. 277, 279, 772 P.2d 1130, 1132 (1989).

¶11        The corporal's testimony that he knew Manweiler's voice because he had arrested her numerous times in the past called the jurors' attention to matters they would not normally be justified in considering in reaching a verdict. Although the evidence might have been minimally relevant to prove Manweiler's identity, and accordingly admissible under Arizona Rule of Evidence 404(b), it could have been precluded as unfairly

prejudicial under Rule 403 had defense counsel timely objected.[3] Defense counsel, however, did not object or ask the superior court to strike this apparently unexpected testimony, and the prosecutor immediately followed up by eliciting testimony that the corporal had spent "quite some time" interviewing Manweiler after she was arrested for the instant offenses.

¶12 Nevertheless, the record reflects little probability this testimony influenced the jury. During the State's direct examination of the corporal in its case-in-chief—which occurred a day before defense counsel cross-examined him—the corporal testified without objection that he had known Manweiler through police contacts for at least ten years. The corporal also testified that during his post-arrest interview of Manweiler, she had repeatedly told him she was trying to change her lifestyle and had not recently sold methamphetamine. This testimony minimized any unfair prejudice the reference to prior arrests might have had on the jury's consideration of the instant offenses. Further, the court's instruction to the jury that evidence of the "prior contact with law enforcement" could not be used as evidence that Manweiler "is disposed to engage in criminal activity" further limited any unfair prejudice from the reference to numerous arrests in the previous decade. *Jones*, 197 Ariz. at 304, ¶ 32, 4 P.3d at 359 ("When the witness unexpectedly volunteers information, the trial court must decide whether a remedy short of mistrial will cure the error.").

¶13 Moreover, the evidence supporting Manweiler's convictions was overwhelming. *See supra* ¶¶ 2-3. There was little probability that the jury's verdict would have been any different absent this improper testimony. The superior court therefore did not abuse its discretion in denying a mistrial.

B. Rebuttal Testimony

¶14 Manweiler also argues the superior court should not have allowed the corporal to rebut her testimony that she had never been arrested and did not believe that she had ever met the corporal before by detailing his first contact with her. Manweiler did not object to this testimony or renew her request for a mistrial on the basis of this testimony,

---

[3]We reject the State's argument that defense counsel invited the corporal's testimony that he had arrested Manweiler numerous times by challenging his qualifications to recognize her voice. *See State v. Lucero,* 223 Ariz. 129, 136, ¶ 20, 220 P.3d 249, 256 (App. 2009) ("A party . . . invites prejudicial testimony by being the first party to elicit the testimony.")

and thus we review for fundamental, prejudicial error. *See State v. Henderson,* 210 Ariz. 561, 567-68, ¶ 19-20, 115 P.3d 601, 607-08 (2005).

**¶15**     The corporal's testimony directly rebutted Manweiler's testimony that she had never been arrested by nor met the corporal before.[4] And, Manweiler had at this point already testified to being an "ex-meth user," and in the final instructions, the superior court instructed the jury to consider the evidence only for limited purposes. *See supra* ¶ 8.  On this record, the superior court's failure to strike this testimony was not fundamental, prejudicial error.

II.     Prosecutorial Misconduct

**¶16**     Manweiler argues the prosecutor intentionally deprived her of her right to due process and a fair trial by arguing facts not in evidence. Specifically, Manweiler argues the corporal testified in rebuttal he had had "only one contact with her prior to the arrest in this case in an unrecorded arrest 8 years prior," but in rebuttal closing argument the prosecutor stated the corporal had testified he had had many prior contacts with Manweiler.

**¶17**     Prosecutorial misconduct "is not merely the result of legal error, negligence, mistake, or insignificant impropriety, but, taken as a whole, amounts to intentional conduct which the prosecutor knows to be improper and prejudicial and which he pursues for any improper purpose with indifference to a significant resulting danger of mistrial." *State v. Aguilar*, 217 Ariz. 235, 238-39, ¶ 11, 172 P.3d 423, 426-27 (App. 2007) (quotation omitted).  Because Manweiler failed to object at trial, she bears the burden of demonstrating prosecutorial misconduct and fundamental, prejudicial error. *See Henderson,* 210 Ariz. at 567-68, ¶¶ 19-20, 115 P.3d at 607-08.

**¶18**     The record does not support Manweiler's argument.  Her argument relies on the State's question to the corporal about "the first time that you had contact with Kari Manweiler." *See supra* ¶ 7.  In his closing, defense counsel mistakenly argued the corporal testified that before her current arrest the corporal last heard Manweiler's voice eight years earlier.

---

[4]Manweiler also argues for the first time on appeal that the State violated Arizona Rule of Criminal Procedure 15.1(b)(7) by failing to disclose before trial the arrest as a "prior act[]" that it intended to use to prove identity at trial.  The record demonstrates, however, that the State had not intended to elicit any testimony on the prior contacts, and warned defense counsel after the State rested that if defense counsel opened the door further, the State would elicit the details of this arrest.

Defense counsel then argued, "I don't see how it's possible for most of us to recognize somebody's voice after not hearing it for eight years."

**¶19**        As discussed, the corporal testified he had had multiple contacts with Manweiler over the years. *See supra* ¶ 4. Accordingly, in rebuttal closing, the prosecutor argued:

> [The corporal] did not testify the last time he heard Kari Manweiler's voice was eight years ago. He testified that's when he arrested the defendant. When he clarified, he said he had several contacts with her. He said that he conducted those interviews with her February 7th of 2014, that those took several minutes of time. They were lengthy. He spoke to her on scene, he spoke to her twice at the police station, and he's reviewed those tapes to write reports, he's heard her voice; and sitting in court, being asked to listen to the video, he heard her voice because it's different than [L.M.].

The prosecutor's argument was therefore a fair summary of the evidence and was not improper.

## CONCLUSION

**¶20**        For the foregoing reasons, we affirm Manweiler's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama