NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DAVID MARNAE LEROY STONEHAM, *Appellant.*

No. 1 CA-CR 16-0296
FILED 6-20-2017

Appeal from the Superior Court in Maricopa County
No. CR2014-155644-001
The Honorable James R. Rummage, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jillian Francis
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Rena P. Glitsos
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Patricia K. Norris and Judge Jennifer B. Campbell joined.

---

J O H N S E N, Judge:

¶1        David Marnae Leroy Stoneham appeals his conviction and imposition of probation for child abuse, a Class 4 felony and domestic violence offense.  For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Stoneham sprinted across the three northbound lanes of 51st Avenue near Northern Avenue in Glendale one morning, leaving his 8-year-old son behind on the center median.[1]  His son darted out after him.  An oncoming car swerved to avoid hitting the boy, but the driver's side rear-view mirror struck the boy and broke off, and the boy fell to the road and lay there for a minute until a passing motorist stopped, scooped him up, and took him to the sidewalk.  The boy sustained abrasions to his elbows and knees, and was transported to the hospital by ambulance.

¶3        An officer at the scene smelled alcohol on Stoneham and testified he had bloodshot, watery eyes and "a significant sway while we were standing there talking."  Stoneham told the officer "that he must have gotten ahead of his son" before the accident.

¶4        At the hospital, Stoneham "admitted to having a large amount of vodka before the accident."  He told the officer he was trying to teach his son to look to make sure there were no vehicles before crossing the street.  He conceded they were not near a crosswalk when they tried to cross the street.  He said he looked to the right, did not see any vehicles, and proceeded to cross the street, and his son ran after him.

¶5        The jury convicted Stoneham of negligent child abuse under circumstances likely to produce death or serious physical injury, a lesser-included offense of the charged crime of reckless child abuse under circumstances likely to produce death or serious physical injury.  The jury

---

[1]        We view the evidence in the light most favorable to sustaining the conviction.  *State v. Boozer*, 221 Ariz. 601, 601, ¶ 2 (App. 2009).

also found that it was a domestic violence offense.  The court suspended sentence and imposed supervised probation for one year.  Stoneham filed a timely notice of appeal.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2017), 13-4031 (2017), and -4033(A) (2017).[2]

## DISCUSSION

### A.    Denial of Mistrial and Juror *Voir Dire.*

¶6         Stoneham argues the superior court abused its discretion in refusing a mistrial or in failing to conduct individual *voir dire* immediately after learning that jurors might have overheard bench conferences.  We review the denial of a motion for mistrial for abuse of discretion.  *State v. Jones*, 197 Ariz. 290, 304, ¶ 32 (2000).

¶7         Stoneham moved for a mistrial after cross-examination of the first witness, arguing that in the absence of a white noise machine, both side's lawyers had reported overhearing bench conferences, and it was possible the jury also overheard them.  The prosecutor later clarified that her co-counsel "could only hear pieces, but not entire sentences."  The court denied a mistrial, finding no prejudice to Stoneham "in anything that has gone on with respect to bench conferences."  The court added, however, "I certainly will do my best to – I'll pull the microphone closer and make sure that I speak as softly as possible."

¶8         The court also denied the defense request to *voir dire* the jurors about whether they had heard any of the discussions, reasoning, "I'm not going to voir dire them unless there is a suggestion that there is something specific that would have been prejudicial to Mr. Stoneham."  Instead, when the jury returned to the courtroom, the court reiterated its preliminary instruction on bench conferences:

> Ladies and gentlemen, I just want to reassert to you what was said to you in the – in the preliminary instructions regarding bench conferences.  Whenever there is a bench conference, you should try to avoid hearing what's being said during that bench conference.  And if at any time you are able to hear – hear and understand what's being said, if you could bring that

---

[2]        Absent material revisions after the date of an alleged offense, we cite a statute's current version.

to the attention of the Court or court staff, we would appreciate that very much.

¶9        The court denied Stoneham's renewed request for a mistrial two days later, reasoning that it had instructed the jurors to inform the court if any had heard any of the bench conferences, and because none had come forward, no basis existed for a mistrial.  The court suggested in the future it might excuse the jurors during bench conferences.  Just before the defense rested, it moved for a mistrial.  The court denied the motion, but asked jurors whether any of them had overheard anything they understood during the bench conferences.  No juror responded affirmatively.

¶10        A mistrial is "the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *State v. Dann,* 205 Ariz. 557, 570, ¶ 43 (2003).  In determining whether to grant a mistrial under circumstances such as these, the superior court should consider whether the remarks called the jurors' attention to matters that they would not be justified in considering in reaching a verdict and the probability that the remarks influenced the jurors. *State v. Bailey*, 160 Ariz. 277, 279 (1989).  "The trial judge is in the best position to determine whether a particular incident calls for a mistrial because the trial judge is aware of the atmosphere of the trial, the circumstances surrounding the incident, the manner in which any objectional statement was made, and the possible effect on the jury and the trial." *State v. Williams*, 209 Ariz. 228, 239, ¶ 47 (App. 2004).

¶11        The superior court here acted well within its discretion in denying a mistrial because the record fails to show that any juror overheard anything said at the bench conferences.  The court had instructed the jury in preliminary instructions: "Please do not be concerned with what we are discussing at any bench conference we may have.  Please respect the privacy of those participating in the bench conference in order to maintain the fairness of the trial."  The court reiterated this instruction after the defense first requested a mistrial, adding, "And if at any time you are able to hear – hear and understand what's being said, if you could bring that to the attention of the Court or court staff, we would appreciate that very much."  Because there is no indication in this record that the jury failed to heed these instructions, we presume the jury followed them. *See State v. Newell,* 212 Ariz. 389, 403, ¶ 68 (2006).  As the court noted near the close of trial, none of the jurors had come forward to report hearing and being able to understand anything said at the bench conferences.  Finally, just before the defense rested, the court directly asked the jurors if any of them had heard and understood any portion of the bench conferences.  No one

responded. On this record, the court acted well within its discretion in denying a mistrial.

¶12    Moreover, Stoneham has failed to show that any discussions the jurors might have overheard called their attention to evidence outside the record, warranting individual *voir dire* or a mistrial. The court denied *voir dire* of the jury when Stoneham first requested it, finding no prejudice to him "in anything that has gone on with respect to bench conferences." In support of his contention that he was prejudiced, Stoneham cites two specific bench conferences at which he argues jurors may have overheard discussions of Stoneham's blood alcohol test results, which had been ruled inadmissible. The record reflects, however, as Stoneham concedes in his reply, that the jury was not in the courtroom during the first of the two bench conferences. As for the other bench conference Stoneham cites, the record shows that neither the term "BAC" nor anything similar was ever mentioned; no evidence outside the record was discussed. On this record, Stoneham has failed to show that the court abused its discretion in denying his motion for mistrial or individual *voir dire*.

## B.    Unavailable Witness's Prior Testimony.

¶13    Stoneham argues the superior court violated his confrontation and due-process rights in finding that a witness was unavailable to testify at trial and in allowing that witness's testimony from Stoneham's first trial, which had ended in a mistrial, to be read to the jury. The witness had testified at the first trial that although he did not see the car strike the child, he saw Stoneham and his son on the center median before the accident, consistent with the testimony of two other witnesses, and that he saw Stoneham continuing to cross the street after the accident.

¶14    The witness contacted the prosecutor early on the day he was scheduled to testify at this second trial, a Wednesday, and told the prosecutor that after he reported complications from a recent abdominal surgery, his nurse had advised him to call an ambulance and get to the hospital. The following day, Thursday, the witness informed the prosecutor that if he were released from the hospital before Monday, he would appear to testify.

¶15    On Monday, the prosecutor informed the court that the witness was in the hospital awaiting surgery. An investigator testified outside the presence of the jury that he met with the witness in his hospital room at St. Joseph's Hospital earlier that day and learned that the witness was being monitored by hospital staff pending a decision on whether he

needed further surgery to address extreme abdominal swelling and rectal bleeding. A nurse at St. Joseph's Hospital had given the investigator a handwritten note stating that the witness had been hospitalized at St. Joseph's Hospital since Friday and was "unable to appear at court today." A document from Banner University Medical Center listed his admitting diagnosis at 6:41 a.m. Thursday as "bleeding colostomy." The investigator testified the witness had been transported to Banner on Thursday from John C. Lincoln Hospital.

¶16 The court initially denied the State's request to find the witness unavailable, in part because of uncertainty about whether the witness was unable to testify because of medical reasons, and in part because it was not known why he had been released from Lincoln and Banner hospitals. Following a brief recess, the investigator resumed the stand and testified that he had talked with the nurse at St. Joseph's Hospital again, and she had reported that the witness would not be able to testify because he was taking hydromorphone, a drug stronger than morphine; he was in an isolation room because he was infected with "C. Diff"; and he was awaiting a "colostomy revision." Based on this additional testimony, the court granted the State's motion to find the witness unavailable because of physical illness and allowed his testimony from the first trial to be read to the jury, noting that the constitutional and evidentiary requirements had been satisfied.

¶17 We review for abuse of discretion a superior court's finding that a witness is unavailable. *State v. Montaño*, 204 Ariz. 413, 420, ¶ 25 (2003). We also review for abuse of discretion a court's finding about whether "defense counsel had sufficient opportunity to cross-examine the witness at the prior proceeding." *State v. Schad*, 129 Ariz. 557, 569 (1981). We review evidentiary rulings that implicate the confrontation clause *de novo*. *State v. Ellison*, 213 Ariz. 116, 120, ¶ 42 (2006).

¶18 The Confrontation Clause prohibits admission of a testimonial statement of a witness who did not appear at trial unless he is unavailable to testify and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 59, 68 (2004). For purposes of the evidentiary rules governing the admission of former testimony, a witness may be considered unavailable because of "a then-existing infirmity [or] physical illness." Ariz. R. Evid. 804(a)(4). The unavailability requirement under the Confrontation Clause is at least as strict as that under hearsay principles. *State v. Medina*, 178 Ariz. 560, 576 (1994); *see also* 2 McCormick on Evidence § 253 at 248 (Kenneth S. Broun, ed., 7th ed. 2013) ("Under the influence of the Confrontation Clause, a

higher standard of disability may be required in criminal cases for witnesses testifying against the accused."); *cf. State v. Lehr*, 227 Ariz. 140, 149, ¶ 33 (2011) (citing *Crawford*, 541 U.S. at 68) ("The Confrontation Clause allows the admission of testimonial hearsay that satisfies the common law requirements of 'unavailability and a prior opportunity for cross-examination.'"). The length to which the State must go to produce a witness for trial, however, is "a question of reasonableness." *See Montaño*, 204 Ariz. at 420, ¶ 26 (citation omitted).

**¶19**        Included among the factors that may be considered in determining whether a witness is currently unavailable due to illness for purposes of the Confrontation Clause are the importance of the absent witness, the nature and extent of the cross-examination in the earlier testimony, the nature or severity of the witness's illness, the expected duration of the illness, the reliability of the evidence concerning the probable duration of the illness, and any special circumstances counseling against a delay to allow the witness to recover. *See United States v. Faison*, 679 F.2d 292, 297, 297, n.4 (3d Cir. 1982). These factors support the court's finding in this case that the witness was unavailable because of serious physical illness. Although the witness testified he saw Stoneham and his son on the median before the accident, and saw Stoneham continuing to cross the street after the accident, his testimony merely corroborated the testimony of other witnesses. His medical condition was serious by any standard, and his hospitalization and continued unavailability were of uncertain duration. The witness was in the hospital and under the influence of hydromorphone on Monday, and was the final witness the State planned to call before it rested its case. Moreover, before trial, the court had informed prospective jurors that they would need to be available only through Tuesday.

**¶20**        As for other factors bearing on the issue, although the record does not reflect that the State had subpoenaed the witness's attendance at the second trial, he had been subpoenaed for the first trial, and defense counsel told the court that he believed the prosecutor in the first trial had asked that all subpoenas from the first trial remain in effect. In any case, the existence of a subpoena was not relevant under these circumstances, because the prosecutor had avowed the witness had contacted her the day he was due to testify and said he was willing to appear at trial if he were discharged from the hospital before Monday, the date to which his testimony had been continued. *See State v. Edwards*, 136 Ariz. 177, 182 (1983) (no *per se* rule requiring a subpoena to establish state's good faith effort to obtain witness); *Montaño*, 204 Ariz. at 420, ¶ 26. On this record, the court

did not abuse its discretion in finding the witness was unavailable for purposes of the Confrontation Clause.

¶21 Nor did the court abuse its discretion in making the further finding that the witness's testimony from the first trial could be read to the jury. Stoneham argues that the use of the prior testimony violated his due process and confrontation rights because he could not impeach the witness in areas "unknown in the first trial or that counsel strategically decided not to go into then because of the course the first trial had taken," specifically that the witness purportedly had a prior conviction for theft of credit card information and was a recovering heroin addict.[3] In making this argument, however, Stoneham does not explain what happened at the second trial that changed his strategy for the witness.

¶22 The Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. *United States v. Owens*, 484 U.S. 554, 567 (1988). The court did not abuse its discretion in finding that Stoneham had sufficient opportunity to cross-examine the witness during the first trial, and his strategic choice not to impeach him then did not violate his right to confront the witness at the second trial. *See Lehr*, 227 Ariz. at 149, ¶ 33; *State v. Hinkle*, 26 Ariz. App. 561, 566 (App. 1976) (no denial of right to confrontation in defendant's "strategic choice not to fully question the witness.").

## C. Purported Prosecutorial Misconduct.

¶23 Stoneham argues the prosecutor improperly argued facts not in evidence, repeatedly vouched for a prosecution witness, and impugned defense counsel's integrity.

¶24 To determine whether a prosecutor's remarks are improper, we consider: "(1) whether the remarks call to the attention of the jurors matters that they would not be justified in considering in determining their verdict, and (2) the probability that the jurors, under the circumstances of the particular case, were influenced by the remarks." *Jones*, 197 Ariz. at 305, ¶ 37 (citation omitted). In considering whether argument is misconduct, this court "looks at the context in which the statements were made as well as the entire record and to the totality of the circumstances." *State v. Nelson*, 229 Ariz. 180, 189, ¶ 39 (2012) (citation and internal punctuation omitted).

---

[3] Stoneham has not cited any portion of our record on appeal to support these contentions.

¶25 "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Morris*, 215 Ariz. 324, 335, ¶ 46 (2007) (citation and internal punctuation omitted).

### 1. Asserted facts not in evidence.

¶26 Stoneham argues first that the prosecutor's argument that Stoneham "had a few drinks that morning" was unsupported by the evidence, which showed that he had "consumed a large amount of vodka." "[P]rosecutors have wide latitude in presenting their closing arguments to the jury: 'excessive and emotional language is the bread and butter weapon of counsel's forensic arsenal, limited by the principle that attorneys are not permitted to introduce or comment upon evidence which has not previously been offered and placed before the jury.'" *Jones*, 197 Ariz. at 305, ¶ 37 (citation omitted). The prosecutor's reference to Stoneham having "a few drinks" was not misconduct; it was a reasonable inference from Stoneham's admission that he had "consumed a large amount of vodka."

### 2. Asserted improper vouching.

¶27 Stoneham argued the prosecutor engaged in improper vouching during closing argument. There are "two forms of impermissible prosecutorial vouching: (1) where the prosecutor places the prestige of the government behind its witness; [and] (2) where the prosecutor suggests that information not presented to the jury supports the witness's testimony." *State v. King,* 180 Ariz. 268, 276-77 (1994) (citation omitted).

¶28 The court sustained objections to the first three comments Stoneham cites, in which the prosecutor argued that police testified "exactly what the defendant said"; asserted the emergency room doctor did not report the incident as possible child abuse because she did not know the circumstances of the accident; and stated, "I believe that the evidence itself shows that the defendant --."[4] After sustaining the objection to the first comment, the court specifically instructed the jury that it could rely on its own recollection of the evidence. The court had previously instructed the jury in preliminary and closing instructions that what the lawyers say is not evidence, that it must disregard questions, testimony or exhibits to which an objection was sustained, and that it was up to the jury to decide what the

---

[4] Defense counsel had argued that the officers are "not able to actually tell you what Mr. Stoneham said that day actual[ly] occurred."

facts were based on the evidence presented in court. Thus, even assuming for purposes of argument that the cited comments were improper, in light of the court's sustaining the objections and its instructions to the jury, Stoneham is unlikely to have suffered prejudice from the comments.

**¶29** The court overruled Stoneham's objection to another argument by the prosecutor that the driver of the vehicle that hit Stoneham's son had "never had a speeding ticket." Defense counsel objected that the State had a good faith belief that the driver had a misdemeanor conviction for driving under the influence, and it was therefore "improper" and "confusing" to argue that the driver had never had a speeding ticket. But the driver had testified he had never had a speeding ticket; the prosecutor did not engage in any misconduct by making this argument in closing.

### 3. Comments purportedly impugning counsel's integrity.

**¶30** Stoneham argues that the prosecutor impugned defense counsel's integrity by suggesting that defense counsel was trying to divert attention from his client's conduct by attacking the police investigation. Although it is improper for a prosecutor to attack the integrity of defense counsel, it is not improper to tell the jury that the defense's closing argument confuses the issues or is misleading. *Compare State v. Hughes*, 193 Ariz. 72, 86, ¶ 59 (1998) ("Jury argument that impugns the integrity or honesty of opposing counsel is . . . improper.") *with United States v. Sayetsitty*, 107 F.3d 1405, 1409 (9th Cir. 1997) ("[c]riticism of defense theories and tactics is a proper subject of closing argument"). During the defense closing argument, the defense attacked the police investigation at length. The prosecutor did not engage in misconduct by arguing that defense counsel's attack on the investigation was an attempt to divert the jury's attention from Stoneham's conduct.

### 4. Cumulative effect of asserted misconduct.

**¶31** Stoneham argues that the cumulative effect of the purported misconduct denied him a fair trial. Stoneham has failed to demonstrate that the "prosecutor intentionally engaged in improper conduct and did so with indifference, if not specific intent, to prejudice the defendant," as necessary to win reversal on the basis of cumulative error. *See State v. Gallardo*, 225 Ariz. 560, 568, ¶ 35, 570, ¶¶ 46-47 (2010).

**CONCLUSION**

**¶32** For the foregoing reasons, we affirm Stoneham's conviction and resulting imposition of probation.

