NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MARTIN DANIEL VOGE, *Appellant.*

No. 1 CA-CR 20-0037
FILED 4-20-2021

Appeal from the Superior Court in Mohave County
No. S8015CR201701472
The Honorable Derek C. Carlisle, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Casey Ball
*Counsel for Appellee*

Mohave County Legal Advocate, Kingman
By Jill L. Evans
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Brian Y. Furuya joined.

---

**T H U M M A**, Judge:

¶1        Defendant Martin Daniel Voge appeals his convictions and resulting sentences for conspiracy to commit first-degree murder, attempted first-degree murder and two counts of aggravated assault. Because Voge has shown no error, his convictions and sentences are affirmed.

**FACTS[1] AND PROCEDURAL HISTORY**

¶2        One day in September 2017, C.S.[2] received a phone call from his former roommate Callie Robinson. Robinson said she wanted to return C.S.' laptop, and they arranged to meet in a parking lot in Golden Shores, Arizona. While C.S. waited in his truck for Robinson to arrive, Robert Davis (who he had never met) shot him several times.

¶3        C.S. managed to drive to a nearby fire department for help. While receiving medical care, C.S. told paramedics that Robinson was involved in the shooting. One of the paramedics, who knew Robinson, had seen her earlier that night nearby. Robinson later confessed to helping Voge orchestrate a plan to kill C.S. by luring him to the parking lot so that Davis could shoot him.

¶4        Voge and C.S. had been feuding for about a year before the shooting. The feud began when C.S.'s live-in girlfriend, M.W., began a romantic relationship with Voge. C.S. then moved out, taking with him A.S., their minor daughter. Voge and C.S. later engaged in repeated, heated

---

[1] The evidence is construed in a light most favorable to sustaining the verdicts, resolving all reasonable inferences against Voge. *See State v. Payne*, 233 Ariz. 484, 509 ¶ 93 (2013).

[2] Initials are used to protect the privacy of the victims and witnesses who did not participate in the crimes. *See State v. Maldonado*, 206 Ariz. 339, 341 ¶ 2 n.1 (App. 2003).

text messages and physical altercations. Days before the shooting, Voge threatened to kill C.S. with "guns ablazing." On the night of the shooting, Voge told C.S.'s stepmother that C.S. "needed to be dead."

¶5        Robinson told police that Voge claimed C.S. had been harming A.S. Robinson first rejected Voge's demands to locate C.S. Davis then introduced her to Voge. Davis then threatened to harm Robinson and her children, while wielding a gun if she did not help him find C.S. As a result, Robinson and Davis drove to meet C.S. Robinson waited at a friend's apartment, while Davis shot C.S.

¶6        After being arrested, Davis admitted to shooting C.S. with Voge's gun. Davis said Voge ordered him to shoot C.S. to repay a $2,500 debt, with Voge threatening to kill Davis' children if he refused. Davis said Voge wanted C.S. killed because Voge believed C.S. was harming A.S.

¶7        Voge told police he met C.S. "maybe once" but had no contact with him since C.S. sent him a text message a month earlier. Voge admitted that he was trying to sort out whether C.S. had been harming A.S. Voge said he had last spoken to Robinson "a week or two" before the shooting and knew Davis as a "kid" in the neighborhood. Voge said he did not know whether Robinson and Davis knew each other.

¶8        Voge, Robinson and Davis were charged with conspiracy to commit first-degree murder, a Class 1 felony; attempted first-degree murder, a Class 2 felony; and two counts of aggravated assault, Class 3 felonies.[3] Before trial, Robinson and Davis pled guilty to lesser offenses and were sentenced to prison. Both Robinson and Davis testified at trial, but not as conditions of their plea agreements. Voge elected not to testify in his own defense, as was his right.

¶9        After a five-day trial, the jury found Voge guilty as charged. The court sentenced Voge to life in prison with the possibility of release after 25 years on the murder-conspiracy conviction and lesser, concurrent prison sentences on the other convictions, with 685 days presentence incarceration credit. This court has jurisdiction over Voge's timely appeal pursuant to Article 6, Section 9 of the Arizona Constitution, and Arizona

---

[3] Voge also was indicted on four drug-related charges severed from the murder trial and resolved by a plea agreement after the murder trial.

Revised Statutes (A.R.S.) §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1) (2021).[4]

## DISCUSSION

### I. Voge Has Shown No Error in the Denial of His Motions for Mistrial and for a New Trial Based on Prospective Juror's Statements During Voir Dire.

¶10 During voir dire, Prospective Juror S.W. said that he "had heard about [Voge's] case about two years ago . . . in a bar at the VFW." When asked if that caused him to form any opinions about the case, S.W. said that he had "heard [Voge] was guilty." S.W. said he could disregard what he had heard and decide the case solely on the evidence produced at trial. The court denied Voge's motion for mistrial based on other potential jurors hearing what S.W. said, concluding S.W.'s statements would not "influence the whole jury in a negative way." The court, however, excused S.W. from jury service.

¶11 Outside the other jurors' presence, Prospective Juror A.A. said he was "very concerned" that S.W.'s remarks "kind of tainted the process." After further questioning, however, A.A. said he could set aside S.W.'s remarks, follow the court's instructions and decide the case only on the evidence presented. Although the court denied a motion to strike A.A. for cause, A.A. was not selected as a juror.

¶12 The court addressed the remaining prospective jurors as follows:

> At some point in time there was a juror who expressed [an] opinion in this case about the defendant's guilt or innocence, and with respect to that . . . I'm going to advise all of you that you have to make a decision in this case based on the evidence that will be presented during the trial and that you will have to make a decision . . . based solely on that evidence . . . [and] you will have to start with the presumption that the defendant is innocent, and it will be up to the

---

[4] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

state to prove the defendant guilty beyond a
reasonable doubt.

Is there anybody who could not be fair and
impartial based on the statement made by the
other juror? The record should reflect there are
no hands shown.

After the guilty verdicts, Voge unsuccessfully moved for a new trial,
arguing in part that S.W.'s comments violated his right to a fair trial. On
appeal, Voge argues the court should have granted his motions for mistrial
and new trial because S.W.'s remarks impermissibly tainted the panel. Both
rulings are reviewed for abuse of discretion. *State v. Jones*, 197 Ariz. 290, 304
¶ 32 (2000) (mistrial); *State v. Spears*, 184 Ariz. 277, 287 (1996) (new trial).

**¶13** A criminal defendant has a constitutional right to a fair and
impartial jury but is not entitled to "any one particular jury." *State v.
Greenawalt*, 128 Ariz. 150, 167 (1981). A defendant must show "objective
indications" that an excused juror's comments prejudiced the empaneled
jurors. *State v. Doerr*, 193 Ariz. 56, 61–62 ¶ 18 (1998). The superior court is in
the "best position to assess [the comments'] impact on the jurors." *Id.* at 62
¶ 23. As applied, Voge identifies nothing in the record showing that S.W.'s
comments prejudiced the empaneled jurors. He relies on A.A.'s expression
of concern to assert that S.W.'s comments "most likely had a negative effect
on the entire panel." But A.A. made clear that he was voicing only his
opinion, adding he could follow the court's instructions in fairly and
impartially deciding the case.

**¶14** Voge cites *Mach v. Stewart*, 137 F.3d 630 (9th Cir. 1997) and
*Paschal v. United States*, 306 F.2d 398 (5th Cir. 1962) for the proposition that
S.W.'s comments improperly contaminated the other prospective jurors.
Both cases are distinguishable, involving potentially prejudicial comments
by potential jurors who tendered expert-like opinions on relevant matters.
*See Mach*, 137 F.3d at 632–33 (reversing sexual conduct with a minor
conviction when potential juror repeatedly said she had "never known a
child to lie about sexual abuse" in her years as a social worker); *Paschal*, 309
F.2d at 399–400 (reversing conviction when potential juror said he was a
director of the bank that received defendant's counterfeit money). S.W.'s
generalized comments about something he had heard two years earlier
conveyed no comparable expert-like information.

¶15        The superior court protected Voge's right to a fair jury, and Voge has not overcome the presumption that the empaneled jurors followed the court's instructions. *See State v. Kuhs*, 223 Ariz. 376, 387 ¶ 55 (2010). Thus, Voge has shown no reversible error in the court's denial of his motions for mistrial and for new trial.

**II.    Voge Has Not Shown the Court Erred in Failing to Declare a Mistrial or Grant a New Trial Based on Evidence Suggesting Voge May Have Served Time in Prison and Was a "Convict."**

**A.    C.S.'s Trial Testimony**

¶16        On direct examination of C.S. by the State, the following exchange took place:

> Q. Going back, was there ever a point in your . . . relationship . . . with [Robinson] while [Voge] was there that you actually got along with [Voge]?
>
> A. We weren't buddy-buddy, but I was introduced to him—[M.W.] told me that that was her brother. Oh, that's my brother. Just got out of prison or whatever. That was my understanding of the—not that they were lovers.

Voge moved for a mistrial, contending C.S.'s statement that Voge had been in prison was unfairly prejudicial. The court denied the motion but struck the answer, directed the jurors to disregard it and, in final instructions, reminded the jurors they were not to consider stricken testimony. Outside the presence of the jury, the court later explained "there wasn't any actual evidence presented that the defendant was in prison."

¶17        Voge argues the court abused its discretion by not granting a mistrial. *See Jones*, 197 Ariz. at 304 ¶ 32. "A declaration of a mistrial is the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *State v. Adamson*, 136 Ariz. 250, 262 (1983). "When a witness unexpectedly volunteers an inadmissible statement, the action called for rests largely within the discretion of the trial court which must evaluate the situation and decide if some remedy short of mistrial will cure the error." *Id.* In deciding whether a mistrial is warranted, courts examine "(1) whether

the jury has heard what it should not hear, and (2) the probability that what it heard influenced [it]." *State v. Miller*, 234 Ariz. 31, 40 ¶ 25 (2013).

¶18        The State concedes the jurors should not have heard testimony suggesting that Voge had been in prison. *See id.* The court, however, immediately struck that brief testimony and directed the jurors not to consider it. The testimony was not repeated or again referenced at trial. On this record, the court thus acted within its discretion in imposing a remedy short of a mistrial. *See Adamson*, 136 Ariz. at 262; *Kuhs*, 223 Ariz. at 387 ¶ 55; *see also State v. Stuard*, 176 Ariz. 589, 601–02 (1993) (concluding testimony that defendant had been in prison was not unfairly prejudicial when the remark was brief and not further mentioned).

### B.        Testimony About Text Messages.

¶19        A detective testified that Voge sent C.S. a text message stating, "Maybe I'm confused, but I thought you were a convict. Anywhere in our code does it say it's okay to hang out or associate with a snitch who tries to build cases." Voge objected when the State sought to have the detective read C.S.'s response, which was "She didn't tell you the entire story." Voge asserted that his text message (including "our code") improperly implied that he was a convict. The court agreed that it might be interpreted that way but added that a juror could also interpret the message to mean "we people don't like snitches" instead. The court allowed the State to introduce C.S.'s text response.

¶20        Voge argues the court erred (1) by failing to sua sponte declare a mistrial and (2) by denying Voge's motion for a new trial, which alleged in part that the text message evidence contributed to "cumulative prejudice" at trial. "Absent fundamental error, a defendant cannot complain if the court fails to . . . sua sponte order a mistrial." *State v. Ellison*, 213 Ariz. 116, 133 ¶ 61 (2006). The denial of a motion for new trial is reviewed for an abuse of discretion. *Jones*, 197 Ariz. at 304 ¶ 32.

¶21        Evidence that Voge served time in prison was inadmissible. *State v. Bailey*, 160 Ariz. 277, 280 (1989). Here, however, the references were ambiguous (as the court noted), brief and in passing. *See Jones*, 197 Ariz. at 305 ¶ 34. Moreover, Voge neither asked to strike the evidence nor requested a curative instruction. *Cf. State v. Christensen*, 129 Ariz. 32, 38 (1981) (affirming denial of mistrial when defendant did not seek to strike the testimony or request a curative instruction). The State never again referenced the evidence during trial. *See Stuard*, 176 Ariz. at 601–02. On this record, there is no reasonable probability that the testimony improperly

influenced the verdicts. *See, e.g.*, *State v. Hoskins*, 199 Ariz. 127, 137 ¶ 28 (2000); *Bailey*, 160 Ariz. at 280. Thus, Voge has shown no error. *See Jones*, 197 Ariz. at 304 ¶ 32 (noting superior court "is in the best position to determine whether [improper] evidence will actually affect the outcome of the trial").

**III.  Voge Has Shown No Error in the Admission of Evidence That He Had Been in Custody with a Defense Witness.**

**¶22**        Voge disclosed Robert Jeffrey as a witness to testify about a purported conversation he had with Robinson a month before the shooting. Jeffrey met Voge when they were in jail together; Jeffrey faced unrelated charges while Voge awaited trial in this case. Jeffrey testified that, after apparently hearing him talking with someone else about C.S., Voge asked Jeffrey what he knew about the victim. Jeffrey said Robinson had told him information relevant to Voge's defense. Voge sought to preclude the State from eliciting evidence that the conversation took place in jail, asserting that such information would be unfairly prejudicial. The State responded that the context of their discussions was "completely relevant," and the same prosecutor was assigned to the cases against Voge and Jeffrey.

**¶23**        The court allowed the evidence, reasoning the circumstance of their meeting was "relevant to the context of the conversation" because "there are potential dynamics that are different in a jail atmosphere than outside a jail atmosphere." The court added Jeffrey's incarceration status potentially added credibility to his testimony, because a typical defendant "would not believe himself to receive any benefit by testifying [for the defense] in a case that involves the same prosecutor."

**¶24**        Jeffrey testified that he and Voge had met in jail and discussed Voge's case, that a month before the shooting Robinson was his coworker, he lived in the same area as C.S. and they drove similar vehicles. Jeffrey also testified that Robinson told him she and others had been looking for C.S. to "beat [him] up" and nearly attacked Jeffrey by mistake because they confused his car for C.S.'s car. Voge offered Jeffrey's testimony to make the point that Robinson had been planning an attack on C.S. without Voge's involvement weeks before the shooting.

¶25 With the parties' agreement, the court gave the jury the following limiting instruction:

> You have heard evidence that the defendant was in jail for at least some period of time while the case was pending. This evidence is submitted only for the limited purpose of determining the credibility of witnesses; and therefore, . . . you must consider it only for that limited purpose and not for any other purpose.

¶26 A superior court has substantial discretion in determining whether the probative value of relevant evidence is substantially outweighed by a danger of unfair prejudice. *State v. Clabourne*, 142 Ariz. 335, 343 (1984); *see* Ariz. R. Evid. 403. In reviewing such a determination, this court views the challenged evidence in the "light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *State v. Harrison*, 195 Ariz. 28, 33 ¶ 21 (App. 1998). "Unfair prejudice results if the evidence has an undue tendency to suggest decision on an improper basis, such as emotion, sympathy, or horror." *State v. Mott*, 187 Ariz. 536, 545 (1997).

¶27 Voge has shown no abuse of discretion. The timing and circumstances of Jeffrey's conversation with Voge were probative of his credibility. That context allowed the jurors to consider (1) the reasonableness of their chance meeting and (2) whether the genesis of their discussions made it more likely that the two coordinated their stories. *See* Ariz. R. Evid. 401. Thus, the context of the evidence was valuable to the jurors in deciding whether to accept Jeffrey's testimony.

¶28 As the superior court also reasoned, admitting evidence of Jeffrey's pretrial incarceration led to minimal possible prejudice. After defense counsel elicited testimony from Jeffrey that the prosecutor trying Voge's case was also prosecuting his case, counsel asked why he would testify where "you have the same prosecutor that . . . is still prosecuting you." Jeffrey answered that he was "here to speak the truth . . . whether it hurts [him] or not." Defense counsel asserted in closing that Jeffrey's account was credible, noting he testified "even though the same prosecutor is prosecuting both his case and this one . . . [and] he exposed himself to some . . . consequences; maybe, maybe not." A reasonable juror could thus conclude that Jeffrey's incarceration status enhanced his credibility, thereby benefitting Voge.

¶29 Nor did the evidence unfairly prejudice Voge's defense. *Cf. State v. Murray*, 184 Ariz. 9, 35 (1995) ("Certainly the jurors were aware that defendants were arrested and had spent some time in custody prior to trial. Such knowledge is not prejudicial and does not deny defendants the presumption of innocence."). Similarly, Voge has not shown how the evidence invited the jurors to decide the case on an improper basis, particularly given the limiting instruction. *See Mott*, 187 Ariz. at 545; *Kuhs*, 223 Ariz. at 387 ¶ 55; *cf. State v. Villalobos*, 225 Ariz. 74, 80 ¶ 20 (2010) (instructing the jury on the "limited purposes for which it could consider" other-acts evidence "appropriately mitigated" any prejudice).

## IV. The Court Did Not Err by Refusing to Give a Third-Party Culpability Instruction.

¶30 A third-party culpability instruction tells the jurors (1) the State has the burden of proving the defendant committed the charged offenses, and (2) if the jury has a reasonable doubt about the defendant's guilt because a third party may have committed the crime, it must find him not guilty. *See* Rev. Ariz. Jury Instr. (RAJI) Stand. Crim. 47 (5th ed. 2019). In denying Voge's request for this instruction, the court explained that Voge had not presented any evidence of third-party culpability. The court added that the requested instruction was inappropriate because Voge was charged as an accomplice, reasoning that the instruction should be given when the defendant points blame at an uncharged party instead of "somebody that is already charged with the offense." Voge argues the court erred by denying his request to give the instruction, which this court reviews for an abuse of discretion. *State v. Moody*, 208 Ariz. 424, 467 ¶ 197 (2004).

¶31 A defendant has a right to have the jury instructed on any theory reasonably supported by the evidence. *Id.* But "[w]here the law is adequately covered by instructions as a whole, no reversible error has occurred." *Doerr*, 193 Ariz. at 65 ¶ 35. As the Arizona Supreme Court has noted, "[n]o Arizona case has required a third-party culpability instruction" because the "substance of the instruction [is] adequately covered" by the instructions "on the presumption of innocence and the State's burden of proving beyond a reasonable doubt all elements of the crimes charged." *State v. Parker*, 231 Ariz. 391, 405 ¶¶ 55–56 (2013).

¶32 Because the court properly instructed the jury on the State's burden of proof and the presumption of innocence, it did not have to give the third-party culpability instruction. *Id.* The court also instructed the jurors on accomplice liability and the culpability of a co-conspirator, and the required proof for such charges. Because the instructions given

adequately explained the applicable law, the absence of the requested third-party culpability instruction did not affect the verdicts. *See id.*; *Doerr*, 193 Ariz. at 65 ¶ 35. Had the jurors accepted Voge's defense that Robinson and Davis acted without his involvement, they would have found Voge not guilty because the charged offenses required proof that Voge participated in committing the crimes.

**¶33** Despite *Parker*, Voge cites *State v. Rodriguez*, 192 Ariz. 58 (1998), and *State v. Gibson*, 202 Ariz. 321 (2002), for the proposition that the third-party culpability instruction was required. Both cases are distinguishable. *Rodriguez* involved a request for an alibi instruction, which is not at issue here. *Gibson* dealt with whether third-party culpability evidence was admissible. *Parker* cited both cases in reaching its conclusion. 231 Ariz. at 405 ¶¶ 55–56. *Parker* also makes clear that any error in rejecting the instruction is not reversible, given that the court properly instructed the jurors on the State's burden of proof and the presumption of innocence. *See id.*

## CONCLUSION

**¶34** Voge's convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:   AA